WIENCEK, Appellant,

v.

ATCOLE COMPANY, INC. et al., Appellees.

[Cite as *Wiencek v. Atcole Co., Inc.* (1996), 109 Ohio App.3d 240.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–95–23.

Decided Feb. 9, 1996.

*George L. Kentris* and *Garth W. Brown,* for appellant.

*Steve C. Shuff* and *Alan G. Ross,* for appellees.

HADLEY, Judge.

Plaintiff-appellant, Joseph C. Wiencek, appeals from the judgment of the Seneca County Court of Common Pleas which granted the motion for a directed verdict of defendants-appellees, Brenda and John Weslow. Appellees are the owners and majority shareholders [1] of the close corporations Atcole Company and Atcole Material Handling ("Atcole").

Appellant began working for John in May 1987 at Atcole pursuant to an employment contract, drafted by John, which included a provision for appellant's salary and commissions. Appellant's main duty was to bid on government contracts, and, through his efforts, he was able to secure a three-year government contract for Atcole in late October 1988 to produce fence posts. Approximately two weeks after being awarded the government contract, appellant left Atcole and began employment elsewhere.

Appellant returned to Atcole in October 1989 and signed a new contract and helped Atcole finish the remaining orders pursuant to the government contract. During the eleven months that appellant was at other employment (November

---

1. A minority of the shares in Atcole are held by appellees' children.

1988 through October 1989), he was in contact with John and helped employees of Atcole begin the first order under the government contract.

The government contract expired on October 14, 1991. Appellant terminated his employment with Atcole approximately two months later, subsequent to demanding the commission due him from the government fence post contract. Atcole refused to pay the commission and appellant filed suit against Atcole Material Handling, Atcole Company and John and Brenda Weslow, attempting to pierce the corporate veil.

The case proceeded to a jury trial in May 1995. At the close of appellant's case, appellees moved for a directed verdict in their favor. The Weslows argued that appellant had failed to present sufficient evidence that Atcole was merely the alter ego of the Weslows, and, therefore, appellant's attempt to pierce the corporate veil of Atcole failed and the Weslows could not be held personally liable for the commission, if any was owed, to appellant. The trial court agreed with the Weslows and granted their motion for a directed verdict. The issue of whether appellant was entitled to a commission from Atcole for the fence post contract proceeded to be determined by the jury. The jury returned a verdict against Atcole on this issue and awarded damages to appellant in the amount of $206,000. That judgment was affirmed by this court. *Wiencek v. Atcole Material Handling, Inc.* (Dec. 14, 1995), Seneca App. No. 13–95–31, unreported, 1995 WL 737541.

■ This appeal relates only to the issue of whether the trial court properly granted the Weslows' motion for directed verdict at the close of appellant's case. Appellant sets forth the following assignment of error:

"The trial court erred in granting summary judgment in favor of defendants-appellees, John and Brenda Weslow, upon a finding that plaintiff-appellant failed to produce sufficient evidence to pierce the corporate veil, where the evidence established that defendants-appellees, John and Brenda Weslow, so controlled Atcole Material Handling, Inc. and Atcole Company, Inc. that neither corporation had any independent mind nor will of [its] own, control over the corporation[s] was exercised in such a manner as to commit a fraud, and unjust loss resulted to the appellant."

Although appellant refers to the judgment which dismissed the Weslows as one from summary judgment in his assignment of error, it is obvious, from appellant's and appellees' arguments and the record, that the error alleged to have occurred is from the judgment granting the motion of appellees for a directed verdict. Therefore, in the interests of justice, we will address appellant's assignment in the context of what occurred in the trial court.

■ The Ohio Supreme Court has stated that when a court has before it a motion for a directed verdict, it must grant the motion when, construing the evidence most strongly in favor of the party opposing the motion, it finds that reasonable minds can only come to one conclusion and that conclusion is adverse to the party opposing the motion. *The Limited Stores, Inc. v. Pan American World Airways, Inc.* (1992), 65 Ohio St.3d 66, 73, 600 N.E.2d 1027, 1033–1034. A motion for a directed verdict presents a question of law because the motion is testing the legal sufficiency of the plaintiff's case. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 656 N.E.2d 957. Thus, an appellate court makes a review of the evidence independent of the trial court's conclusion. *Id.*

■ Turning to the specific issue in this case, whether appellant presented evidence during his case-in-chief on all the elements of the standard to pierce the corporate veil to overcome a motion for directed verdict by appellees, we are guided by the Ohio Supreme Court's recent review of corporate law on piercing the corporate veil:

"A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation. See Presser, Piercing the Corporate Veil (1991) 1–4. An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes. 'That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded.' *State ex rel. Atty. Gen. v. Standard Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279, paragraph one of the syllabus. Under this exception, the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity. Courts will permit individual shareholder liability only if the shareholder is indistinguishable from or the 'alter ego' of the corporation itself. See, generally, Presser, *supra.*" *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075, 1085. The court noted in *Belvedere* that it had not recently addressed the elements necessary to pierce the corporate veil. Given the opportunity to do so in *Belvedere*, it stated:

"[T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the

person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Id.* at 289, 617 N.E.2d at 1086.

The parties focus their attention on the second element of the *Belvedere* standard. The trial court, in granting the directed verdict, determined that appellant had not presented evidence of fraud or an illegal act. Appellant argues in his appellate brief that appellees deliberately took steps to reduce the profit of Atcole so that it would not have to pay appellant the commission due him on the government fence post contract.

Foremost, we note that the record presents some evidence of the first element required in *Belvedere.* Testimony presented in appellant's case-in-chief indicated that John Weslow had "absolute, complete authority" over Atcole and, also, that John Weslow had the "final authority" for Atcole. See *Saeks v. Saeks* (1985), 24 Ohio App.3d 67, 70, 24 OBR 122, 125, 493 N.E.2d 280, 283.

We now turn to the second element of *Belvedere,* whether appellant presented some evidence that John Weslow exercised his control over Atcole in such a manner as to commit a fraud or illegal act upon appellant.

We first note that by the use of the language "in such a manner as to" in the second element of *Belvedere* indicates that the Ohio Supreme Court meant not that the fraud or illegal act complained of must have been specifically directed at the person seeking to disregard the corporate entity, but only that a fraud or illegal act was committed by virtue of the control exercised by those to be held liable and resulted in a loss to the person seeking to disregard the corporate fiction.

A more vexing problem is presented by the Supreme Court's use of the words "fraud or illegal act" in the second element. Did it intend to restrict attempts to pierce the corporate veil to only those acts which were fraudulent or illegal or did it intend to encompass a broader range of actions, namely those acts which would lead to unfair or inequitable consequences? The *Belvedere* opinion indicates the latter, that it intended to allow a corporate veil to be pierced when inequitable or unfair consequences had resulted. In applying the law to the facts of the *Belvedere* case, the Supreme Court stated:

"We hold that the Association did not introduce sufficient evidence to pierce RERC's corporate veil and reach Roark individually. The Association did not introduce any evidence that Roark used his control over RERC in such a manner as to *defraud* the Association. Neither the trial testimony presented by the Association nor the stipulations agreed to by the parties even suggested that Roark, personally, used his influence to *defraud or injure* the Association or its members." (Emphasis added.) *Id.* at 289, 617 N.E.2d at 1086.

Also, the Supreme Court noted, at 287, 617 N.E.2d at 1085, that the purpose behind the exception to the general law of corporations is to prevent shareholders from hiding behind the fictional entity of the corporation "when it would be *unjust.*" (Emphasis added.)

Moreover, we note that prior to its ruling in *Belvedere,* the Ohio Supreme Court had never specifically addressed the issue of what was encompassed in the definition of "fraud" in determining when to disregard corporate formalities and allow the corporate veil to be pierced. *LeRoux's Billyle Supper Club v. Ma* (1991), 77 Ohio App.3d 417, 602 N.E.2d 685. However, as noted in *LeRoux's* at 422, 602 N.E.2d at 688–689, the Ohio Supreme Court had (prior to its decision in *Belvedere* ) endorsed the notion that fraud or an illegal act need not be the *only* determinant of whether a corporate veil can be pierced, but indicated that the corporate veil could be pierced if an injustice would result. Several Ohio appellate courts have disregarded the corporate entity where evidence of harm, injustice or fundamental unfairness has been presented. *Id.* at 422, 602 N.E.2d at 688–689; *Saeks, supra.* Some appellate courts have also endorsed the use of factors to aid in their determination of whether or not to disregard the corporate form, including undercapitalization, failure to observe corporate formalities, absence of corporate records, and unjust or inequitable results. *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 607 N.E.2d 1140; *Bucyrus–Erie Co. v. Gen. Prod.* (C.A.6, 1981), 643 F.2d 413; see, also, *LeRoux's, supra.* Most recently, the Twelfth District Court of Appeals followed *Belvedere, supra,* in a case involving an attempt to pierce the corporate veil, and also endorsed the use of factors to aid in its determination in *Dirksing v. Blue Chip Architectural Products, Inc.* (1994), 100 Ohio App.3d 213, 653 N.E.2d 718. See, also, *Cent. Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc.* (1994), 93 Ohio App.3d 397, 638 N.E.2d 1049.

■ Based upon a reading of *Belvedere,* the purpose of the theory "piercing the corporate veil," and Ohio case law prior to and subsequent to *Belvedere,* we hold that one seeking to disregard the corporate entity may present evidence that the shareholders exercised their control over the corporation in such a manner as to commit a fraud, illegal, or other unjust or inequitable act upon the person seeking to disregard the corporate entity in order to satisfy the second prong of the test enunciated in *Belvedere.*

Turning to the specific facts of this case, we find that appellant satisfied his burden to overcome appellees' motion for directed verdict on the second and third elements of the *Belvedere* test for disregarding the corporate entity. Testimony presented during appellant's case-in-chief was that during appellant's employment with Atcole and in the year appellant was due his commission, John and Brenda Weslow gave themselves very large bonuses as officers of the corpora-

tion, used Atcole to pay for labor (by an Atcole employee) and material at the Weslows' personal residence, and purchased a recreational vehicle in the corporate name which was used by the Weslows, but not for corporate purposes. Such evidence indicates that Atcole's profits may have been so depleted by such expenditures that it would prevent appellant from receiving his commission. Thus, the record presents some evidence of the second element of the *Belvedere* test for piercing the corporate veil. Finally, evidence was presented during appellant's case-in-chief of the third element of the *Belvedere* test, that John Weslow refused to pay appellant's commission for the government fence post contract.

Thus, appellant presented some evidence of each of the elements of the *Belvedere* test in his case-in-chief, which was sufficient to defeat a motion for a directed verdict.

Because the trial court improperly granted appellees' motion for directed verdict, appellant's sole assignment of error is sustained. The judgment of the Seneca County Court of Common Pleas is reversed and the cause is remanded for proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

EVANS and SHAW, JJ., concur.