This is an appeal from a judgment of the Toledo Municipal Court which granted plaintiff-appellee, Joan Collum, a monetary judgment of $9,325 against defendants-appellants, Wholesale Lighting 
Supply Co. ("Wholesale Lighting") and Philip Perlman, jointly and severally, and in so doing held Perlman liable for a debt of Wholesale Lighting. From that judgment, appellants raise the following assignment of error:
 "THE TRIAL COURT ERRED IN GRANTING JUDGMENT AGAINST THE DEFENDANT PHILIP PERLMAN."
At all times relevant to this case, Wholesale Lighting was a Subchapter S corporation solely owned by Philip Perlman. Perlman was the president and treasurer of Wholesale Lighting and his wife, Lynda Perlman, was the vice president. There was no board of directors and Perlman made all of the management decisions for the company, with occasional advice from his accountant, Jim Weber, and employees. By November 1993, Perlman was having trouble managing the financial affairs of the company. In particular, the company was undercapitalized and Perlman often had to put his personal funds into the company to meet expenses. Weber suggested Perlman talk to appellee Joan Collum. Collum markets herself as an individual with accounting and business management expertise who can help businesses organize their finances and become more profitable. In November 1993, Perlman hired Collum on behalf of Wholesale Lighting to help with the company's financial difficulties.
Initially, Collum made a number of suggestions that were set forth in a document titled "RECOMMENDED ACCOUNTING AND OFFICE PROCEDURES FOR WHOLESALE LIGHTING AND SUPPLY CO." Ultimately, however, Collum became responsible for the corporate records and books, and regularly performed a number of finance related services for Wholesale Lighting. She always billed Wholesale Lighting for those services and, in helping to prepare Wholesale Lighting's tax returns, she included the cost of her services as a business expense. In addition, Collum recommended ways in which Perlman could infuse capital into the company and assisted Perlman in completing business loan applications. However, no bank would give Wholesale Lighting a business loan. Collum then assisted Perlman in taking out a home equity line of credit/home refinancing loan for cash to put into the company.
In June 1995, Perlman remortgaged his home for $136,000. To obtain that loan, however, the bank required Perlman to pay off his previous mortgage as well as some credit cards. Ultimately, Perlman cleared $30,000 in cash which he used to pay vendors and other company expenses. His business, however, continued to flounder. Until April 1995, Wholesale Lighting paid Collum regularly for her services. Starting in May 1995, however, the invoices which Collum submitted to Wholesale Lighting for her services went unpaid. In September 1995, Collum ceased working for Wholesale Lighting. At that time, the invoices for work Collum performed for Wholesale Lighting from May 1995 to September 1995 totaled $9,325.
In August 1996, Perlman began the process of officially closing Wholesale Lighting. He liquidated the company by paying off one vendor with inventory and selling the remaining inventory to his current employer. He used the proceeds of that sale to pay payroll taxes and Michigan and Ohio sales taxes. He was not, however, able to pay all of the company's debts. In particular, he was not able to pay the $9,325 owed to appellee nor was he able to pay approximately $40,000 owed to vendors. Moreover, when he finally canceled his state of Ohio vendor's license on January 31, 1997, the company owed him approximately $100,000 to $120,000.
On November 20, 1995, Collum filed a complaint in the court below against both Wholesale Lighting and Perlman, seeking to recover the $9,325 due her for services rendered. The case proceeded to a trial to the bench at which Perlman, Collum and several other witnesses testified. On June 18, 1998, the court filed findings of fact, conclusions of law and a judgment entry awarding Collum $9,325 against Wholesale Lighting and Perlman, jointly and severally. The court's findings of fact read:
 "1. Plaintiff was retained by Wholesale Lighting and Supply Co., hereinafter referred to as `Co.,' by oral agreement, to work as a business consultant for `Co.' for ten dollars per hour, in December, 1993.
 "2. Plaintiff submitted invoices to `Co.' from December, 1993 through April, 1995 under the terms of the oral contract, and was paid for those services by corporate check of Defendant, `Co.'
 "3. Plaintiff submitted invoices to `Co.' from May, 1995 through August, 1995. Plaintiff submitted invoices to Defendant `Co.' for $9,325.00 for services under the oral contract during that period (Plaintiff's Exhibit #4).
 "4. Defendant `Co.' did not pay the invoices referenced in Finding of Fact #3, nor did Defendant Perlman pay the invoices referenced in Findings of Fact #3 and evidenced by Plaintiff's Exhibit #3 and remained unpaid.
 "5. Wholesale Lighting and Supply Co. was a Subchapter S corporation during the time of Plaintiff's invoices (Tr. 14).
 "6. Defendant Perlman was President and Treasurer of `Co.' and his wife was Vice President, but she had little or no involvement in the operation of `Co.' (Tr. 13-15).
 "7. Defendant `Co.' had no Board of Directors and was `undercapitalized' (Testimony of Perlman).
 "8. Defendant Perlman began terminating the Defendant `Co.' in 1996, but there was no formal dissolution of the Corporation.
 "9. Defendant Perlman had complete control of Defendant `Co.' and answered to no one as to its day-to-day operations."
Based on these findings of fact, the court determined that the corporate veil of Wholesale Lighting should be pierced and that Perlman should be held individually liable for the debt to Collum. In making this determination, however, the court expressly stated: "Philip Perlman did not commit fraud through his control, however and [sic] unjust act was the result." It is from that judgment that appellants now appeal.
In their sole assignment of error, appellants contend that the trial court erred in holding Philip Perlman individually liable for a debt of Wholesale Lighting, because Collum did not meet her burden of proving the grounds for piercing the corporate veil.
A well-established principle of corporate law is that where a valid corporation exists, a corporate officer will not be held personally responsible for the liabilities of that corporation. Centennial Ins. Co. v. Tanny Internatl. (1975),46 Ohio App.2d 137, 141-142. "An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes." Belvedere Condominium Unit Owners' Assn. v.R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 287. Pursuant to this exception:
 "The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id. at paragraph three of the syllabus.
In the present case, the evidence is clear that Philip Perlman exercised complete and total control over Wholesale Lighting such that Wholesale Lighting had no separate existence of its own. The evidence is equally clear, however, and the lower court so held, that Perlman did not commit fraud or an illegal act through his control of Wholesale Lighting. Nevertheless, the lower court found that because the company was undercapitalized and because Perlman did not follow adequate formalities when liquidating the corporate assets, the improper control and use of the corporation resulted in an unusual loss to Collum. The court therefore held that a grave injustice would occur if the corporate entity were not disregarded in this case.
Appellee cites an opinion from the Third District Court of Appeals in support of the trial court's decision. In that case, the court expanded upon the Belvedere standard and concluded that where shareholders exercise their control over a corporation in such a manner as to commit an unjust or inequitable act upon the person seeking to disregard the corporate entity, the second prong of the Belvedere test will be satisfied. Wiencek v. AtcoleCo., Inc. (1996), 109 Ohio App.3d 240, 245. In our view, however, that conclusion goes too far. In Belvedere the court recognized that the principal behind piercing the corporate veil was to hold "* * * individual shareholders liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." Id. at 287. However, in setting forth the three prong test as it did in paragraph three of the syllabus, the court appears to have limited the application of the doctrine to those situations in which "control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity[.]" (Emphasis added.) Nothing in the record before us supports a conclusion that Perlman exercised control over Wholesale Lighting in such a manner as to commit fraud or an illegal act against Collum.
Accordingly, we find that the trial court erred in awarding Collum a judgment against Perlman and the sole assignment of error is well-taken.
On consideration whereof, the court finds substantial justice has not been done the parties complaining and the judgment of the Toledo Municipal Court is reversed as to its judgment against Perlman and affirmed as to its judgment against Wholesale Lighting. Court costs of this appeal are assessed to appellee.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Richard W. Knepper, J.
 Mark L. Pietrykowski, J.
CONCUR.