**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0545n.06**
**Filed: August 2, 2006**

**No. 05-3359**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WASTE CONVERSION TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| WARREN RECYCLING, INC., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant, | ) | |
| | ) | |
| WASTE TRANSFER SERVICES, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| T&G ENTERPRISES, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| ANTHONY DICENSO, JR., | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| GILBERT REIGER, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**Before: SILER, DAUGHTREY, ROGERS, Circuit Judges.**

**Rogers, Circuit Judge.** Waste Conversion seeks to pierce the corporate veil of Warren Recycling and hold Warren Recycling's shareholders liable for damages caused by Warren Recycling's breach of contract. Waste Conversion's theory for piercing is that Warren Recycling has disposed of all collectable assets in an attempt to frustrate creditors. The behavior in this case is not the type of behavior that justifies piercing the corporate veil. We affirm because the district court correctly applied Ohio law and denied Waste Conversion's attempt to pierce.

## I. BACKGROUND

The parties are involved in the garbage-disposal business. Plaintiff, Waste Conversion, is a waste-transfer station. In effect, Waste Conversion is the middle man between the landfill and construction companies that create debris. Defendant Warren Recycling's primary business is landfill operation. Warren Recycling also operates a waste-transfer station, but this lawsuit primarily concerns Warren Recycling's landfill operations.

Warren Recycling is a corporation owed by Anthony DiCenso (90% owner) and Gilbert Reiger (10% owner). Reiger is also the secretary and treasurer of Warren Recycling. Various other DiCenso family members work for Warren Recycling. Warren Recycling's primary assets are a permit that allows it to operate a landfill and goodwill. Warren Recycling does not own the landfill property. Instead, it leases the landfill from T&G Enterprises, a partnership. T&G would later be converted to Waste Transfer Systems, LLC, so we refer to T&G/Waste Transfer as one continuing entity.

T&G/Waste Transfer has the same proportional ownership as Warren Recycling. DiCenso owns 90% of T&G/Waste Transfer and Reiger owns 10% of T&G/Waste Transfer. In effect, DiCenso and Reiger operate a landfill under the name Warren Recycling, but the assets that comprise the landfill business are held by two corporations: Warren Recycling and T&G/Waste Transfer.

Waste Conversion entered a contract with Warren Recycling, which Warren allegedly breached. In December 1999, Warren agreed to accept Waste Conversion's garbage. Warren Recycling also agreed not to enter into a similar arrangement with another waste-transfer station that competed with Waste Conversion (this is to say, that Warren could not enter a similar agreement with another waste transfer station within 50 miles of Milford, Connecticut, where Waste Conversion operated). Warren also agreed to unload Waste Conversion's railcars within 72 hours of arrival. In the underlying litigation, Waste Conversion alleged that Warren Recycling breached those agreements. The original complaint was filed on September 20, 2002. It named Warren Recycling as the only defendant. The case was assigned to a magistrate judge with the consent of the parties.

According to Waste Conversion's evidence, Warren Recycling effectively liquidated all of its assets after the complaint was filed. Waste Conversion alleges that the liquidation transactions were not bona fide sales. In 2002, DiCenso and Reiger began negotiating with an outside buyer to sell the landfill operations, which included the permits owned by Warren Recycling and the land owned by T&G/Waste Transfer. The outside buyer would pay a total of about $8.5 million for the

landfill property (owned by T&G/Waste Transfer) and permits (owned by Warren Recycling). It is not clear how much of the purchase price was attributable to the permits versus the land. Waste Conversion's evidence shows that Warren Recycling did sell/transfer an asset of value to the buyer, but Warren Recycling did not receive payment for the permit. The installment payments from the outside buyer for Warren Recycling/T&G/Waste Transfer's landfill operations were paid directly to T&G/Waste Transfer (i.e., Warren Recycling received no money). The monthly payments were over $100,000. After the $100,000+ per month was paid to T&G/Waste Transfer the funds were distributed to DiCenso and Reiger. The deal to sell the landfill operations of Warren Recycling/T&G/Waste Transfer fell through for reasons unrelated to this litigation, but evidence shows T&G/Waste Transfer received about $1.7 million in installment payments on the purchase agreement. Waste Conversion alleges that no money was paid to Warren Recycling and that Warren Recycling's valuable permits are now held by T&G/Waste Transfer.

Additionally, Waste Conversion alleges that Warren Recycling disposed of its remaining cash assets by paying excessive salary and rent. Also, Warren Recycling continued to pay high salaries to its employees (who were DiCenso's family members) even though Warren Recycling was no longer running the landfill business. Additionally, Waste Transfer alleges that Warren Recycling paid allegedly excessive compensation to DiCenso and Reiger. Waste Conversion argues that Warren Recycling, in effect, paid DiCenso and Reiger to work for T&G so that Warren Recycling no longer had any assets. Lastly, Warren Recycling paid for T&G/Waste Transfer's accounting and various administrative costs. In sum, plaintiff argues that Warren Recycling transferred all its assets

either to its shareholders or T&G/Waste Transfer, which was owned by Warren Recycling shareholders.

Waste Conversion amended the original complaint in an attempt to pierce the corporate veil. On March 15, 2004, Waste Conversion amended its complaint to add DiCenso and Reiger. Waste Conversion also added Waste Transfer Systems, LLC, which is not a Warren Recycling shareholder. The district court opinion refers to DiCenso, Reiger, and T&G/Waste Transfer the "New-Party Defendants." Waste Conversion alleges that the new-party defendants (1) breached the agreement between Warren and Waste Conversion, (2) breached the implied covenant of good faith, (3) engaged in unfair competition, (4) tortiously interfered with existing business relationships, and (5) abused the corporate form, through fraudulent transactions, to shelter themselves from liability.

The new-party defendants filed a motion to dismiss that was construed as a summary judgment motion. The new-party defendants argued that Waste Conversion could not pierce the corporate veil and hold shareholders liable for the alleged contract breach of Warren Recycling.

The district court dismissed the claims against the new-party defendants because the elements of piercing the corporate veil under Ohio law were not met. First, the district court treated the motion to dismiss as a motion for summary judgment. As applied to the individual shareholders, the district court applied *Belvedere Condominium Unit Owners' Association v. R.E. Roark Construction*, 617 N.E.2d 1075 (Ohio 1993), and reasoned (1) that the shareholders did not have complete control over the corporation, and (2) that control over the corporation was not used to

commit fraud. Piercing is an equitable doctrine that makes shareholders liable for corporate obligations when the shareholders abuse the corporate form. The district court considered various factors to determine whether the shareholders have complete control over the corporation such that the corporation had no separate mind: failure to observe corporate formalities, shareholders holding themselves out as personally liable, and diversion of funds for personal use. The district court reasoned that Warren Recycling was an entity separate from its shareholders.

Even assuming that DiCenso and Reiger met *Belvedere*'s first "control" prong, the district court reasoned that DiCenso and Reiger did not use the corporate form to commit bad acts. The district court, relying on the defendants' argument that mere contract breach is not enough to justify piercing, held that "there is no evidence that DiCenso and Reiger wrongfully diverted any money from Warren Recycling." Thus, the district court held that DiCenso and Reiger did not use the corporate form in an unjust or inequitable manner.

With respect to holding T&G/Waste Transfer liable for Warren's debts, the district court found the argument that T&G/Waste Transfer was Warren Recycling's alter ego to be "tenuous at best." The district court dismissed Waste Conversion's argument that, because DiCenso and Reiger controlled both companies, the two companies were indistinguishable. Thus, the district court dismissed the claims against the new-party defendants.

Applying Federal Rules of Civil Procedure 54(b), the district court certified the order dismissing the new-party defendants as final and appealable despite the continued pendency of the

claim against Warren. Warren Recycling has subsequently filed for bankruptcy. According to DiCenso, Warren Recycling has "a lot of creditors."

The question in this appeal is whether Waste Conversion can recover against Warren Recycling's shareholders (DiCenso and Reiger) or the successor-in-interest to Warren Recycling's most valuable asset, the permit to operate a landfill (T&G/Waste Transfer).

## II. DISCUSSION

The district court's analysis is correct. We review the district court's summary judgment decision de novo, viewing of the facts in the light most favorable to the plaintiff. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The individual shareholders cannot be held liable because they are not the "alter ego" of Warren Recycling, and the shareholders did not use control over Warren Recycling to commit fraud. The "piercing" claim against T&G/Waste Transfer must fail because T&G is not a shareholder. The plaintiff's allegations that Warren divested itself of all its assets, if true, support claims against T&G/Waste Transfer, DiCenso, and Reiger under a fraudulent conveyance theory. *See* Ohio Rev. Code § 1336.01 et seq. Waste Conversion, however, only stated a "piercing" claim and never argued that the transfers were fraudulent conveyances.

## A. Claims against T&G/Waste Transfer

Waste Conversion seeks to "pierce the corporate veil" and hold T&G/Waste Transfer liable, but T&G/Waste Transfer is not a Warren Recycling shareholder and T&G/Waste Transfer is a

distinct entity from Warren. Thus, T&G/Waste Transfer is not liable for Warren's debts as a shareholder under the theory of veil piercing.

Waste Conversion cannot pierce the corporate veil to hold T&G/Waste Transfer liable as a shareholder because T&G/Waste Transfer is not a shareholder of Warren Recycling. "The 'veil' of the corporation can be 'pierced' and individual *shareholders* held liable for corporate misdeeds when it would be unjust to allow the *shareholders* to hide behind the fiction of the corporate entity." *Belvedere*, 617 N.E.2d at 1085 (emphasis added). Thus, Waste Conversion's attempt to hold T&G/Waste Transfer liable as a shareholder must fail.

T&G/Waste Transfer is also not the same entity as Warren Recycling. Waste Conversion argues that T&G/Waste Transfer is functionally the same as Warren. The facts support an inference that T&G/Waste Transfer was not a bona fide purchaser and that the liquidation transaction was structured with intent to hinder creditors. *See* Ohio Rev. Code § 1336.04. But the facts do not support an inference that T&G/Waste Transfer is the "mere continuation" of Warren Recycling. *See Kuempel Service Inc. v. Zofko et al.*, 672 N.E.2d 1026, 1032-33 (Ohio Ct. App. 1996). The mere fact that Warren and T&G/Waste Transfer have the same shareholders does not make the entities interchangeable. This is because T&G/Waste Transfer existed before Warren's insolvency and because T&G/Waste Transfer operates (and operated) a landfill business distinct from Warren's business. *See id.* at 1034. When Waste Conversion first contracted with Warren, nobody ever represented that Warren and T&G/Waste Transfer were the same entity. The two entities held

different assets and separately observed corporate formalities. Thus, the "piercing" claim against

T&G/Waste Transfer fails.

**B. Waste Conversion's piercing claim against DiCenso and Reiger**

Waste Conversion cannot pierce the corporate veil and hold Warren Recycling's

shareholders, DiCenso and Reiger, liable for Warren Recycling's debts.

Waste Conversion's piercing claim fails on either the first or second prong of the *Belvedere*

test. *See* 617 N.E.2d at 1086. The first prong inquires whether the individual shareholders exercised

complete control over the corporation so that the corporation had no separate mind of its own. The

second prong asks whether the control was exercised to commit fraud against Waste Conversion.

Finally, we ask whether injury or unjust loss resulted. Though *Belvedere* offers a three prong test,

the Ohio courts treat the issue as an equitable claim and are somewhat fluid with the application of

the factors. *See, e.g.*, *Wiencek v. Atcole Co.*, 671 N.E.2d 1339, 1342-44 (Ohio Ct. App. 1996).

Warren Recycling is "fundamentally distinguishable" from its individual shareholders. *See*

*Belvedere*, 617 N.E.2d at 1086. We look at function over form and inquire whether the alter ego test

is satisfied. For example, in *Link v. Leadworks Corp.*, 607 N.E.2d 1140, 1146 (Ohio Ct. App. 1992),

piercing was justified where the shareholder disregarded corporate formalities, commingled personal

funds with those of the corporation, and paid for various personal expenditures from Leadworks'

corporate funds. This is not a case where the Warren Recycling's corporate form was a mere shell

for DiCenso and Reiger. Instead, DiCenso and Reiger received salaries and were paid for services

rendered to the corporation. When DiCenso or Reiger received funds from Warren the payments were properly accounted for as salary or payment for services. There are no facts that suggest the shareholders held out or used the corporation's funds as their own. The shareholders and the corporation itself were separate entities that acted independently of each other.

As for the second prong of the *Belvedere* test, even assuming that DiCenso had complete control over Warren Recycling, DiCenso and Reiger did not abuse the corporate form to commit fraud or some other improper act to cause unjust loss to Waste Conversion.

DiCenso and Reiger never used the corporate form to commit fraud. DiCenso and Reiger never made any false statements, never misrepresented Warren's status as a non-recourse entity, and did not commingle personal funds with the funds of the corporation. Thus, there was no fraud that abused the corporate form.

DiCenso and Reiger did not abuse the corporate form to commit some other improper act to cause unjust loss. *Belvedere*'s second prong is not explicitly limited to actual fraud because the language used is "fraud or an illegal act." 617 N.E.2d at 1086. For example, in *Wiencek v. Atcole Co.*, 671 N.E.2d 1339, 1343 (Ohio Ct. App. 1996), the Ohio Court of Appeals allowed piercing where there was no fraud. In *Wiencek*, the shareholders spent all the money in the corporation on personal expenditures so as to render the corporation insolvent. *Id. Wiencek*, however, is distinguishable because the corporation's funds were spent on personal expenditures. In this case, DiCenso and Reiger properly accounted for the funds that were paid to the shareholders as salary

and no payments were made for the shareholder's personal expenses. Unlike the plaintiff in *Wiencek,* Waste Conversion does not allege that DiCenso or Reiger used the corporate funds for personal expenses. DiCenso and Reiger respected the corporate form and accounted for the use of the corporation's funds. This is a case where a corporation was rendered insolvent due to normal business expenses such as salary, rent, and administrative costs. *See Kuempel*, 672 N.E.2d at 1030 (liquidation to the prejudice of creditors did not justify piercing). Thus, DiCenso and Reiger did not abuse the corporate form.

The type of fraud that Waste Conversion alleges is precisely that protected by fraudulent conveyance law and does not rise to the level required to pierce the corporate veil. A fraudulent conveyance is a transfer with intent to hinder a creditor that is made without reasonably equivalent value where the debtor/payee is insolvent. *See* Ohio Rev. Code § 1336.04(A). Taking the facts in the light most favorable to Waste Conversion, assets were transferred to shareholders (in the form of salary) and T&G/Waste Transfer (in the form of rent and a permit) that were not for reasonably equivalent value.

Fraudulent conveyance law is more carefully tailored to the interests of all parties than the blunt instrument of piercing the corporate veil, which, for instance, could permit recovery against the new-party defendants beyond any amounts that were fraudulently transferred. The general remedy in a fraudulent conveyance permits the creditor to recover the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less. *See* Ohio Rev. Code § 1336.08(B)(1). The remedy in fraudulent conveyance stands in contrast with the general remedy

in veil piercing. When the corporation's veil is pierced, the individual shareholders are liable for all of the corporation's debts, which could exceed the value of the assets fraudulently conveyed. See *DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 348 (7th Cir. 2004) (shareholders are jointly and severally liable once the veil is pierced).

While the analysis above is sufficient to affirm, Waste Conversion's attempt to prosecute its claim outside of the bankruptcy court is moreover inequitable. Waste Conversion may have a valid claim against Warren Recycling, and it may have a valid claim against the various individuals who fraudulently received Warren Recycling's assets when Warren Recycling was insolvent. That being said, it does not appear that Waste Conversion is situated differently than Warren Recycling's other creditors. The more equitable approach for a creditor such as Waste Conversion is to use the bankruptcy courts and get in line with all the other creditors. Permitting Waste Conversion to pierce the corporate veil of a bankrupt corporation, while maneuvering to keep its claim outside the bankruptcy proceeding, is not a particularly equitable solution.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.