LONGO CONSTRUCTION, INC., Appellee and Cross–Appellant,

v.

ASAP TECHNICAL SERVICES, INC. et al., Appellants and Cross–Appellees.

[Cite as *Longo Constr., Inc. v. ASAP Tech. Serv., Inc.* (2000), 140 Ohio App.3d 665.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77533.

Decided Dec. 11, 2000.

Robert D. Kehoe and Matthew W. Jorgensen, for appellee and cross-appellant.

*Hermann, Cahn & Schneider, Peter J. Krembs* and *Patrick J. Holland,* for appellants and cross-appellees.

---

JOHN T. PATTON, Presiding Judge.

A jury awarded plaintiff Longo Construction, Inc. $108,800.45 on its breach-of-contract claim against defendant ASAP Technical Services, Inc. The primary issue on appeal concerns the amount of damages.

ASAP is a general contractor specializing in remediation or cleanup of environmentally contaminated sites. A company called Advanced Medical Systems contracted with ASAP to remove an underground storage tank. ASAP, in turn, subcontracted with Longo to perform the excavation work. As relevant here, ASAP's contract with Longo called for a lump sum price of $26,800.

During the course of its work, Longo discovered that radioactive discharge had contaminated the worksite. The presence of radiation changed the nature of the project, requiring additional remediation of the site. To that end, ASAP contracted with Longo on a time-and-material basis to perform the bulk of additional excavation work. Longo billed ASAP $44,321.95 for the additional work.

ASAP paid Longo only $20,000. The evidence at trial showed that ASAP received $144,000 for the additional work Longo performed. Longo made repeated demands for payment of the $51,121.95 owed to it ($26,800 + $44,-321.95 - $20,000 = $51,121.95), but did not receive payment. ASAP claimed that it experienced financial difficulties that prevented it from paying all its creditors. Longo discovered that Advanced Medical Systems had paid ASAP for the work.

Longo filed this action against ASAP setting forth claims of breach of contract, quantum meruit, fraud, fraudulent conveyance, and individual liability on behalf of Inderjit Soni, the majority shareholder and chief executive officer of ASAP. It asked for $51,121.95 in damages. The court directed verdicts on the fraud and fraudulent conveyance claims for relief. The jury found that ASAP breached the contract with Longo by refusing to pay for services performed on a time-and-materials basis, and awarded $108,800.45 in damages. The jury also found that Soni exercised such dominion and control over ASAP that the corporate veil should be pierced and he should be held individually liable. Finally, the court ordered prejudgment interest of $43,579.76. The court denied an ASAP motion for judgment notwithstanding the verdict.

Both parties appeal. ASAP claims that the jury erred by awarding breach of contract damages that exceeded the contract price. It also challenges the imposition of prejudgment interest. Longo cross-appeals, claiming that the court erred by directing verdicts on the fraud and fraudulent-conveyance claims for relief.

The Appeal

I & II

The first and second assignments of error both contest the damages award that exceeded the price of the contract. ASAP maintains that the jury could not have awarded an amount in excess of the contract price. Longo counters that the jury's damage award corresponds to that amount that ASAP received from Advanced Medical.

■ The applicable measure of damages in this case was Longo's expectancy interest, that is, its interest in being put in as good a position as it would have been had the contract been performed. *Brads v. First Baptist Church of Germantown* (1993), 89 Ohio App.3d 328, 338–339, 624 N.E.2d 737, 744–745, citing the Restatement of the Law 2d, Contracts (1981) 102–103, Remedies, Section 344; *Rasnick v. Tubbs* (1998), 126 Ohio App.3d 431, 437, 710 N.E.2d 750, 753–754. Based on the time-and-material basis agreed upon by the parties and verified by Longo's submitted invoices, the unpaid contract price was $51,121.95, not the $108,800.45 awarded by the jury.

Longo argues that the time-and-material basis left the price term open and subject to a reasonable value by the trier of fact. To that end, it maintains that ASAP inflated the value of Longo's work to Advanced Medical Systems by billing Advanced Medical Systems $144,800 for the work Longo performed. Longo thus insists that the damage award should be the value of the contract to ASAP.

We easily reject Longo's argument because the measure of damages is what Longo expected to be paid pursuant to the contract. Longo memorialized this expectancy in its billings—the total sum of $71,121.25, less the $20,000 ASAP did pay.

Longo cannot argue a price based on the contractual relationship between ASAP and Advanced Medical Systems. Longo made a separate and distinct contract with ASAP—it had no contractual relationship with Advanced Medical Systems. What ASAP did in its contract with Advanced Medical Systems has no bearing on Longo's performance or payment. As a subcontractor to ASAP, Longo dealt exclusively with ASAP, not Advanced Medical Systems. If Advanced was willing to pay ASAP's invoices, that benefit would accrue only to ASAP, not Longo.

This assumes that ASAP purposely inflated its invoices to Advanced Medical Systems. Without expressing any opinion on that point, we note that if ASAP inflated the price of Longo's work, that fact would not affect Longo's contract damages. In *Stranahan Bros. Catering Co. v. Coit* (1896), 55 Ohio St. 398, 407–408, 45 N.E. 634, 636–637, the Supreme Court of Ohio stated:

■ "It is also well settled that where the injury results from the default of the contracting party himself, the motive which induces the act or the omission, unless the circumstances raise a claim for exemplary damages, is of no consequence. In such case, evidence of the defaulting party's motives, or of anything which affects only the moral character of the transaction, can have no weight, and is, therefore, inadmissible. Unless the intention belongs directly to the issue, it is not an element in the case. Compensation for breach of contract in relation to the payment of money, or in relation to property, ordinarily does not involve motive, for in the first case the failure to pay, as agreed, is measured absolutely by the sum and interest, no matter what vicious purpose induced the failure, and in the second, compensation, that is, to be placed in the same position he would have been in had the other party performed his contract, is the injured party's right, no matter how earnest the unavailing efforts to perform may have been, nor how free from intent to injure the motive of the defaulting party. 3 Parsons on Contracts, 167, and authorities cited."

Were we to hold otherwise, we would permit Longo to benefit from ASAP's conduct—conduct that Longo itself has characterized as gross overbilling. Since Longo justified its time and materials spent on the additional work in the amount of $51,121.95, the court erred by permitting the jury to return a verdict in excess of that amount. The first and second assignments of error are sustained, and judgment is entered in Longo's favor in the amount of $51,121.95.

## III

The third assignment of error complains that the court erred by awarding prejudgment interest on a $108,800.45 award. Our disposition of the first and second assignments of error necessarily changes the amount of interest due, since the principal balance has changed. We remand to the court for this recalculation.

Moreover, the court's December 23, 1999 journal entry contains a clerical error. It awards prejudgment interest from October 30, 1995 to November 1, 1995. As evidenced by an earlier entry dated December 10, 1999, the court meant to order prejudgment interest from October 30, 1995 to November 1, 1999. On remand, the court should correct this clerical error. The third assignment of error is sustained.

## IV

The fourth assignment of error is that the court erred by failing to direct a verdict on the individual liability of Inderjit Soni. Soni complains that Longo failed to prove the "alter ego" element necessary to pierce the corporate veil. He claims that he did not have sufficient control over the corporation to the extent that he could decide which contractors were paid.

 "A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of a corporation." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075, 1085. The exception to this rule arises at equity to permit recovery of damages from a stockholder who has dominated its corporation. Paragraph three of the syllabus to *Belvedere* states:

"The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."

 In *Seavert v. Ferraro* (Sept. 14, 2000), Cuyahoga App. Nos. 76845 and 76846, unreported, 2000 WL 1300154, we cited *Bucyrus–Erie Co. v. Gen. Prod. Corp.* (C.A.6, 1981), 643 F.2d 413, 418, and said that "[t]here is no precise test to determine whether the elements required to pierce the corporate veil have been satisfied, and each case should be 'regarded as "sui generis" and decidable on its own facts.'" Our review of a decision to pierce the corporate veil is limited to finding whether that decision was supported by competent, credible evidence. *Kuempel Serv., Inc. v. Zofko* (1996), 109 Ohio App.3d 591, 598, 672 N.E.2d 1026, 1030–1031.

## A

The first issue for review is whether the evidence showed that Soni exercised control over the corporation that was so complete that the corporation had no separate mind, will, or existence of its own.

The evidence, viewed in a light most favorable to Longo, showed that Soni did exercise complete control over ASAP. Although Soni was one of three shareholders, he acted as though ASAP was his corporation. He personally advanced funds to equip the company and later guaranteed a bank note to keep the company afloat when it experienced financial difficulties. Ultimately, ASAP's financial position forced Soni to protect his investment. In 1994, he split the company into three entities and in the process spun off all of ASAP's assets, leaving the company with no equipment. When ASAP needed to perform remediation work, it had to subcontract the work.

The only significant asset owned by ASAP was a receivable from an earlier remediation job. That job netted ASAP $500,000. Soni had ASAP cut him a check in that amount. He then took the check to his bank and had that check

exchanged for a cashier's check. Soni then deposited the cashier's check into his wife's personal account. Soni testified that he did this because he was a secured creditor of ASAP and was trying to protect his own investment.

The above constitutes competent, credible evidence supporting a finding that Soni exercised complete dominion and control over ASAP.

## B

Our discussion of the first *Belvedere* factor informs our discussion of the second factor—whether Soni's control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against Longo. Evidence that Soni took the $500,000 payment and converted it to his personal use could be found to be an act of fraud. In reaching this decision, we note that a finding that Soni engaged in the fraud involved in the second *Belvedere* factor is not controlled by the court's decision to direct a verdict on Longo's separate fraud claims. Each case is *sui generis* and decided on that basis. The clandestine way in which Soni transferred the $500,000 payment to his wife could support an inference that he engaged in fraud in order to hide the payment from Longo.

## C

We have little difficulty in finding that Soni's attempt to hide the $500,000 payment constituted an injury or unjust loss to Longo resulting from Soni's control of the company. As Soni admitted at trial, ASAP had no assets of any kind other than the $500,000 receivable. Soni also agreed that Longo performed the work under the contract as agreed by the parties. Under the circumstances, the jury could reasonably find that Soni's decision to pay his wife instead of Longo caused Longo to suffer an injury.

Accordingly, we find competent, credible evidence supported the jury's decision to pierce the corporate veil. The fourth assignment of error is overruled.

### The Cross–Appeal

#### I

The first cross-assignment of error complains that the court erred by directing a verdict on Longo's claims for fraudulent transfer of the $500,000 receivable. Longo filed the fraudulent transfer claim pursuant to R.C. 1336.04(A), claiming that the transfer of funds from ASAP to Soni was made with the actual intent to hinder, delay, or defraud Longo. Soni argued that he had been a secured creditor of ASAP, so the transfer of the $500,000 to him could not have been fraudulent under the statute.

■ R.C. 1336.04(A)(1) states that a transfer of an asset by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor transferred the asset with actual intent to hinder, delay, or defraud any creditor of the debtor. R.C. 1336.01(B)(1) defines an "asset" as "property of a debtor, but does not include any of the following: (1) property to the extent it is encumbered by a valid lien." In order to be a valid lien, the lien must be "effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." See R.C. 1336.01(M). This ordinarily means that a security interest must be perfected under R.C. 1309.20. *Comer v. Calim* (1998), 128 Ohio App.3d 599, 604, 716 N.E.2d 245, 248–249.

■ Soni claims that he perfected a lien against the $500,000 settlement, so his lien is valid and therefore not an asset as contemplated by R.C. 1336.01(B)(1). Longo counters that Soni obtained his lien after the $500,000 settlement occurred and for the sole purpose of frustrating Longo's attempts to be paid under the contract.

The evidence shows that Soni recorded his lien against ASAP in May 1995. The testimony also shows that Soni contemplated protecting his investment in ASAP seven months earlier. When asked if it was correct that he did so "to protect yourself ahead of all other creditors," Soni replied, "It's not correct." This evidence went unrebutted.

Longo tried to cast doubt on Soni's credibility by inferring that Soni's race to secure his loan to ASAP had the improper purpose of closing out all other creditors. Creditors obtain financing statements for precisely that reason—they wish to be first in line because priority dates from the time filing is first made or first perfected, whichever is earlier. By perfecting his security interest, Soni did nothing more than secure his own loan to ASAP, whether at Longo's expense or the expense of some other creditor. This act alone is insufficient to establish a fraudulent transfer.

We reach this decision knowing that Soni secured his debt before Longo performed the additional work. The record is unclear, in fact, as to when the parties discovered that Advanced Medical Systems required additional remediation at the job site. The testimony is that the parties discovered the need for additional remediation shortly after the project commenced in March 1995. But documents admitted at trial do not evidence a change order for the additional remediation work until July 11, 1995. Moreover, Longo's own invoices show that it performed the additional remediation work beginning in July 1995. Whether the parties contemplated the additional work in March 1995 is immaterial to when the parties actually contracted to perform the work. The evidence shows that

Soni perfected his security interest in May 1995, before Longo performed the additional remediation work.

Civ.R. 50(A)(4) permits the court to direct a verdict if, after construing the evidence most strongly in favor of the party against whom the motion is directed, the court finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party. We find that the court did not err by directing a verdict on the fraudulent transfer claim because Soni's security interest existed before the antecedent debt to Longo, Soni could not, as a matter of law, be found to have fraudulently transferred funds from ASAP to himself. The first cross-assignment of error is overruled.

## II

The second cross-assignment of error is that the court erred by directing a verdict on Longo's common-law fraud claim. We find that the court did not err by directing a verdict on this count as there is no evidence to show that Longo relied to its detriment on any statements by ASAP. It may be that ASAP assured Longo's payment after the fact, but that assurance did not induce Longo to perform the additional remediation in the first place. Hence, Longo did not show that it relied on any ASAP statements before taking on the additional remediation. The second cross-assignment of error is overruled.

## III

The third cross-assignment of error complains that the court erred by directing verdicts against Soni's wife, Pritam Soni, and Trans–Enviro, Inc. Longo states that this cross-assignment of error is linked to the first cross-assignment of error and incorporates that argument. Having overruled the first cross-assignment of error, we summarily overrule the third cross-assignment of error as well.

Judgment affirmed as modified and remanded for recalculation of prejudgment interest.

*Judgment accordingly.*

MICHAEL J. CORRIGAN and PORTER, JJ., concur.