OPINION
{¶ 1} Appellants, Robert McAndrews ("McAndrews") and RTBH, Inc. ("RTBH"), appeal the decision of the Butler County Court of Common Pleas to grant judgment in favor of appellee, Robert A. Saurber. We affirm the decision of the trial court.
 {¶ 2} McAndrews is the sole officer and shareholder of RTBH, a glass window and door installation company.[1] Appellee is a general contractor who was hired by the Trenton-Bloomfield School Board in 1999 to do some remodeling at the school. Pursuant to a purchase order with appellee, appellants, as a subcontractor, agreed to install windows and doors in the Trenton-Bloomfield school for a fee of $290,200.
 {¶ 3} When appellants ordered materials or completed a portion of the work, they, like all the subcontractors on the job, submitted a request for a draw on the total price of the contract. Appellants did not have good credit with the material suppliers, however, so when a draw for materials was submitted and approved, appellants and appellee agreed that appellee would issue joint checks to McAndrews and his material suppliers. During the time his company worked on the school project, McAndrews submitted several draws for material and labor. Appellee, in return, issued checks to McAndrews to cover the costs of the materials ordered and the labor performed.
 {¶ 4} The evidence offered at trial indicates that at some point during the project McAndrews took two of the joint checks appellee issued and deposited them into his own corporate bank account, rather than obtain the required joint signatures and pay his suppliers. Consequently, two of the suppliers did not get paid and filed liens against appellee and the school project. To get the liens released, appellee had to pay the suppliers directly, causing appellee to have to pay for material twice.
 {¶ 5} Testimony at trial also indicated that the work completed by appellants was done in an unworkmanlike manner. Furthermore, when appellants were released from the project, they had received draws from appellee totaling an overpayment of approximately $30,000.
 {¶ 6} Soon after appellants were terminated from the project, appellee filed a lawsuit alleging, among other things, breach of contract, fraud, and conversion. The pre-trial process continued for approximately two years, and during that time appellants' initial attorney, Sal Scrofano, filed a motion to withdraw as counsel. The court denied this motion. However, on April 16, 2003, the day of trial, attorney Scrofano informed the court that appellants were willing to release him and, if need be, proceed to trial without the necessity of a continuance. In response, the trial court granted attorney Scrofano's request to be dismissed.
 {¶ 7} With attorney Scrofano dismissed, McAndrews then requested a continuance in order to obtain new counsel. He indicated to the court that attorney Edward McTigue was willing to represent appellants but was unable to appear in court that day. The court denied the request and the trial commenced with McAndrews proceeding pro se.
 {¶ 8} After a two-day bench trial, the court found that RTBH breached its contract with appellee, and that the evidence warranted piercing the corporate veil and holding McAndrews personally liable for the actions of RTBH.
 {¶ 9} This appeal followed, in which appellants raise two assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "The trial court erred to the prejudice of appellant[s] in granting entry of judgment for plaintiff."
 {¶ 12} In their first assignment of error, appellants challenge the trial court's decision to deny a continuance on the day of trial, and the trial court's finding that enough evidence was presented at trial to justify a piercing of the corporate veil. We begin by addressing appellants' contention that the trial court erred in denying the request for a continuance on the day of trial.
 {¶ 13} Appellants first contend that the trial court abused its discretion in denying the request for a continuance on the day of trial because the totality of the circumstances indicated that a delay would not be unreasonable.
 {¶ 14} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge."State v. Unger (1981), 67 Ohio St.2d 65, syllabus. A reviewing court should not reverse the trial court's decision, therefore, unless there has been an abuse of that discretion. Id. at 67. "The term discretion * * * involves the idea of a choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins (1984), 15 Ohio St.3d 164,222. Merely disagreeing with the trial court's choice to deny appellants a continuance, therefore, would not be adequate grounds for this court to reverse. In order to reverse a decision within the sound discretion of the trial court, we must determine that the trial court's choice between the competing considerations was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 15} When a continuance is requested, the competing interests to be considered are the court's right to control its own docket, the plaintiff's and the public's interest in the prompt and efficient administration of justice, and the potential prejudice that could result to the moving party if the request is denied. Unger, 67 Ohio St.2d at 67. In balancing these interests, a court must consider such things as: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gave rise to the request, and any other factors relevant to the particular circumstances of each case. Id. at 67-68.
 {¶ 16} Turning to the circumstances of this case, we note that over two years had passed since the initial complaint was filed. Appellants also had knowledge of attorney Scrofano's desire to withdraw well in advance of the day of trial. Nevertheless, when McAndrews made his request for a continuance, he had not yet even secured an entry of appearance from attorney McTigue. Furthermore, McAndrews stated before attorney Scrofano was released that he was prepared to proceed pro se even if he were not granted a continuance.
 {¶ 17} Additionally, the trial court noted, and we agree, that a tremendous amount of effort is required for the court and an opposing party to prepare for a trial. Granting a continuance requested on the day of trial would have been a substantial burden to all other parties involved. Finally, the record contains no indication of how long the delay would have been if appellant had successfully obtained a continuance.
 {¶ 18} After carefully considering all of the foregoing circumstances of this case, we find that denying appellants' request for a continuance was not unreasonable. A reasonable mind could balance the interests of appellants, the plaintiff, and the court, and conclude justice was better served by denying the request.
 {¶ 19} Appellants next contend that the trial court erred in denying the request for a continuance because doing so left RTBH without representation. As appellants note, under Ohio law a corporation may not maintain an action through an officer who is not a licensed attorney. Disciplinary Counsel v. Shrode,95 Ohio St.3d 137, 2002-Ohio-1759, ¶ 8. Therefore, once attorney Scrofano was excused from the case, RTBH, as a separate defendant, was prohibited from participating in the trial. Only a continuance, appellants argue, would have made it possible for RTBH to have representation once attorney Scrofano was excused. This argument fails, however, in that it assumes the trial court was responsible for insuring that RTBH maintained representation.
 {¶ 20} We are unable to find, and we are unwilling to create, precedent establishing the proposition that a trial court has the duty to insure a corporation maintains legal representation in a civil action. We are aware of the duty of care owed to a corporation by its officers and directors. As of the day of trial, McAndrews was the president of RTBH. It very well could have been a breach of the duty of care officers owe a corporation when McAndrews consented to the release of corporate counsel on the day of trial. We do not find, however, that the trial court erred and caused RTBH to be without legal representation.
 {¶ 21} Furthermore, the record seems to indicate that attorney Scrofano, before he was dismissed, discussed the legal ramifications of his departure with McAndrews. On the morning of the trial and prior to his release, attorney Scrofano informed the court that there was a discussion with appellee's attorney earlier that morning concerning conceding RTBH's liability. Attorney Scrofano indicated appellants' defense concerns were primarily focused on the individual liability of McAndrews.
 {¶ 22} For all the foregoing reasons, we find the trial court acted soundly within its discretion when it refused to grant a continuance on the day of trial.
 {¶ 23} Finally, appellants argue within the first assignment of error that the trial court erred in piercing the corporate veil. Specifically, McAndrews contends that insufficient evidence was presented at trial to support the trial court's decision to hold him personally liable to appellee.
 {¶ 24} "A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation." Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Cos., Inc., 67 Ohio St.3d 274, 287,1993-Ohio-119. The general rule does not apply, however, when a corporate entity is used for criminal or fraudulent purposes. "The `veil' of the corporation can be `pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity," and "when the shareholder is indistinguishable from or the `alter ego' of the corporation itself." Id.
 {¶ 25} In Belvedere, the Court analyzed the foregoing principles and adopted a three-part test for piercing the corporate veil. In order to disregard the corporate form and hold individual shareholders liable, a plaintiff must show: (1) control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. Id. at 289.
 {¶ 26} Whether the three parts of the Belvedere test are satisfied is primarily a question for the trier of fact, and on review we examine the record for competent, credible evidence to support the decision of the trial court. Longo Construction,Inc. v. ASAP Technical Services, Inc. (2000),140 Ohio App.3d 665, 671.
 {¶ 27} Turning to the first prong of Belvedere, we note that Ohio courts have looked at the following factors to determine whether a party sought to be held personally liable exercised dominance and control: (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s). LeRoux's Billyle Supper Club v. Ma (1991),77 Ohio App.3d 417, 422-423.
 {¶ 28} Competent, credible evidence was presented at trial to establish McAndrews' complete dominance and control over RTBH. McAndrews is the sole officer, director, and shareholder of the corporation. We recognize this alone may not be enough to establish dominance of corporate affairs. See Zimmerman v. EagleMtge. Corp. (1996), 110 Ohio App.3d 762, 771 (holding a corporation is a separate legal entity even where there is only one shareholder); Univ. Circle Research Ctr. Corp. v. GalbreathCo. (1995), 106 Ohio App.3d 835, 840 (holding mere fact that an individual is the sole shareholder, one of the officers, and one of the directors in a corporation not enough to establish dominance and control).
 {¶ 29} However, evidence at trial also established that the final authority for all corporate level decisions rested ultimately with McAndrews. His was the only signature authorized as a drawer on the corporate bank account, and although one of RTBH's employees, Richard Huff, also claimed to issue corporate checks, he conceded that he only did so by signing the name "McAndrews." Mr. Huff also did not participate in corporate level meetings or sign any corporate documents.
 {¶ 30} The record also indicates RTBH was undercapitalized and that McAndrews likely diverted funds or other corporate property for personal use. During an identical period preceding this lawsuit, RTBH's corporate tax records showed a loss, while McAndrews' individual tax records show that he paid himself a salary of over $40,000. When questioned about the financial status of RTBH and how he determined his own salary, McAndrews responded by claiming his accountant was responsible for those types of decisions. He also claimed he was ignorant about the tax laws and about how his accountant ascertained RTBH's financial status from year to year.
 {¶ 31} McAndrews also failed to ever specifically account for, or return, the overpayment for labor and materials that he received from appellee. When questioned at trial, he stated only that the funds were used for other corporate expenses. Finally, when entering into the purchase order agreement with appellee, McAndrews signed in his individual capacity, not in his capacity as a corporate officer of RTBH. For this and all the foregoing reasons, we find competent, credible evidence was submitted at trial to establish the first prong of the Belvedere test.
 {¶ 32} Competent, credible evidence was also presented at trial to establish that McAndrews defrauded appellee through his control of RTBH. When McAndrews submitted draws, he signed affidavits declaring that he was entitled to the reimbursements and that no other parties held a legal claim to the payments, knowing full well that other material suppliers did hold claims.
 {¶ 33} Furthermore, when he received checks pursuant to the joint check agreement with appellee, McAndrews deposited them into RTBH's corporate account without first obtaining the signatures of the material suppliers also listed as payees. He then failed to use the proceeds from the draws to reimburse those suppliers for the materials they provided. As a result, appellee was forced to pay the material suppliers separately in order to get them to release liens they had placed on the school project.
 {¶ 34} McAndrews argues the second prong of the Belvedere
test was not met in this case because he did not commit fraud or engage in criminal activity. We find this argument to be without merit. Other Ohio courts have recognized that although theBelvedere court used "fraud" and "criminal activity" in defining the second prong, the true question to be asked is whether it would be unjust under the circumstances of each case to not pierce the corporate veil. In Wiencek v. Atcole Co.,Inc. (1996), 109 Ohio App.3d 240, 245, the Third Appellate District held that a party seeking to establish the second prong of the Belvedere test "may present evidence that the [actor or actors] exercised their control over the corporation in such a manner as to commit a fraud, illegal, or other unjust orinequitable act * * *." (Emphasis added.) We agree with the Third Appellate District that an unjust, wrongful, or inequitable act can satisfy the second prong of Belvedere.
 {¶ 35} For all the foregoing reasons, we find competent, credible evidence was admitted at trial to establish the second prong of the Belvedere test.
 {¶ 36} Finally, competent, credible evidence was introduced to establish that injury or unjust loss resulted to appellee from appellants' control and wrongful acts. Appellee incurred additional project costs from hiring another subcontractor to replace appellants. He was also required to pay the material suppliers that McAndrews failed to pay with the joint checks in order to have liens removed from the school project.
 {¶ 37} All three prongs of the Belvedere test were satisfied in this case. Consequently, appellants' argument regarding piercing the corporate veil is not well-taken.
 {¶ 38} In summary, we find the various arguments raised by appellants challenging the trial court's decision to deny a continuance on the day of trial are without merit. We also find appellants' arguments challenging the trial court's decision to pierce the corporate veil are without merit. Accordingly, the first assignment of error is overruled.
 {¶ 39} Assignment of Error No. 2:
 {¶ 40} "The trial court erred to the prejudice of appellant[s] in denying appellant[s'] motion for a new trial."
 {¶ 41} Civ.R. 59 governs motions for a new trial and provides that a new trial may be granted on any issue for any one of the specified grounds listed in subsection (A)(1) — (9) of the rule. In contending that the trial court erred in denying their motion for a new trial, appellants rely upon subsections (A)(1) and (A)(6).
 {¶ 42} Civ.R. 59(A)(1) provides that a new trial may be granted based upon "[i]rregularity in the proceedings of the court, * * * or any order of the court * * *, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial." Appellants contend, as in the first assignment of error, that the trial court abused its discretion when it denied the request for a continuance on the day of trial. Therefore, appellants argue, the motion for a new trial should have been granted. For the reasons stated above in the discussion of appellants' first assignment of error, we conclude the trial court did not abuse its discretion in refusing to grant a continuance. Appellants' reliance on Civ.R. 59(A)(1) for the proposition that the trial court erred in denying the motion for a new trial, therefore, is not well-taken.
 {¶ 43} Civ.R. 59(A)(6) provides that a new trial may be granted if "[t]he judgment is not sustained by the weight of the evidence * * *." McAndrews contends under this provision that a new trial should have been granted because the decision to pierce the corporate veil was against the manifest weight of evidence.
 {¶ 44} The decision to grant or deny a new trial based upon the manifest weight of evidence is discretionary, and we will not reverse unless we find the trial court abused its discretion.Rohde v. Farmer (1970), 23 Ohio St.2d 82, 90.
 {¶ 45} We concluded above that the trial court's determination to pierce the corporate veil was supported by competent, credible evidence. For the reasons listed therein, we also conclude the trial court did not abuse its discretion in finding sufficient evidence to pierce the corporate veil. Accordingly, McAndrews' reliance on Civ.R. 59(A)(6) for the proposition that the trial court erred in denying the motion for a new trial is also not well-taken.
 {¶ 46} Appellants' second assignment of error is therefore overruled.
Judgment affirmed.
Young, P.J., and Walsh, J., concur.
[1] McAndrews' testified at trial that RTBH does not have a board of directors.