OPINION
{¶ 1} Defendant-appellant, Ronald S. Hilton, appeals from the decision of the Clinton County Municipal Court, awarding judgment to plaintiff-appellee, Sabin Wholesale, in the amount of $9,815.29.[1]
For the reasons outlined below, we reverse the decision of the trial *Page 2 
Court.
 {¶ 2} Appellee is a wholesaler who supplied cigarettes and tobacco products to three Marathon stations, two of those stores being located in Wilmington, Ohio. During the relevant months, these Marathon stations were owned and operated by Anderson Township Marathon, Inc., an Ohio corporation owned by appellant and formally incorporated in January 2003. All three stores were managed by the corporation's store manager, Tanya Haislip.
 {¶ 3} Anderson Township Marathon, Inc. took over the Marathon stations in Spring 2004. At that time, appellee's Vice-President, James Burnett, went into the Southridge Marathon location and spoke with appellant to see if he wished to continue purchasing cigarettes and tobacco products through Sabin Wholesale. Appellant indicated that he did wish to continue purchasing tobacco products through appellee and referred Burnett to the store's manager, Haislip, to work out the details of the agreement. Appellee then began a "payment-on-delivery" relationship with the Marathon stores. The parties did not enter into any written contract.
 {¶ 4} In November 2004, appellee began to allow the stores to purchase the tobacco products on credit. Shortly thereafter, Anderson Township Marathon, Inc. began experiencing financial problems and a number of invoices went unpaid. In January 2005, Burnett called appellant regarding the outstanding debts. Appellant acknowledged the debts and told Burnett that the bills would be paid as soon as possible. Anderson Township Marathon, Inc. later sold the three store locations to a third party in 2005, with the debts to appellee still outstanding.
 {¶ 5} In July 2005, appellee filed a complaint to recover the outstanding debts from appellant personally. Appellant denied personal liability but acknowledged that the corporation, Anderson Township Marathon, Inc., owed the debt to appellee. The case proceeded to a bench trial on April 10, 2006. At the trial, the parties stipulated to an *Page 3 
outstanding debt of $9,815.29.[2] The only remaining issue was whether appellant was personally responsible for the debt or if the liability fell solely on the corporate entity.
 {¶ 6} On behalf of appellee, Burnett testified to his dealings with appellant. Appellee's trial counsel argued that Burnett was never made aware that he was dealing with the corporate entity of Anderson Township Marathon, Inc., as opposed to appellant himself. Appellee further argued that appellant had entered into an oral contract for the personal repayment of the outstanding debt pursuant to their conversation in January 2005.
 {¶ 7} Appellant moved to dismiss the complaint, arguing that he remained protected from personal liability and that judgment could only be entered against the corporate entity. Appellant testified that all invoices were paid with corporate checks and that all negotiations were handled by the corporation's manager or by store employees. Appellant argued that no oral contract or meeting of the minds had occurred with regard to the January 2005 conversation.
 {¶ 8} The trial court disagreed and found that appellant had entered into an oral contract for personal payment of the outstanding debt. The court further found that appellant had failed to demonstrate to appellee that he represented the corporate entity and that appellee relied on those representations. The court therefore entered judgment against appellant for the full amount of the debt owed. Appellant then filed this timely appeal, asserting the following two assignments of error for our review:
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO DISMISS RONALD S. HILTON, INDIVIDUALLY, FROM THE AMENDED *Page 4 
COMPLAINT, AS THE RULING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} Assignment of Error No. 2:
 {¶ 12} "THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} Under both assignments of error, appellant asserts that the trial court's decision in finding him personally liable for the debt owed to appellee is not sufficiently supported by competent and credible evidence. Because these assignments may be resolved together, we will address them jointly.
 {¶ 14} "A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation." Saurber v. McAndrews, Butler App. No. CA2003-09-239,2004-Ohio-6927, ¶ 24, quoting Belvedere Condominium Unit Owners' Assn.v. R.E. Roark Cos., Inc., 67 Ohio St.3d 274, 287, 1993-Ohio-119. However, this "veil" of corporate protection can be "pierced," and corporate officers held liable, "when it would be unjust to allow shareholders to hide behind the fiction of the corporate entity." Id. InBelvedere, the Ohio Supreme Court adopted a three-part test for piercing the corporate veil. "In order to disregard the corporate form and hold individual shareholders liable, a plaintiff must show: (1) control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Saurber
at ¶ 25; Belvedere at 289.
 {¶ 15} A determination of whether the Belvedere test has been satisfied to permit piercing of the corporate veil is primarily a question for the trier of fact. Saurber at ¶ 26. A *Page 5 
reviewing court examines the record to determine whether there is competent, credible evidence to support the decision of the trial court. Id. In Saurber, this court recognized the following factors as relevant to a determination of whether a party exercised dominance and control in the way described in the first prong of Belvedere: "(1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s)." Id. at ¶ 27.
 {¶ 16} At trial, appellee argued that he was never informed that he was dealing with a corporation, as opposed to Mr. Hilton personally. Appellee argued that due to his personal involvement with appellant and the oral agreement that was reached regarding payment of appellant's outstanding debt, appellant should be held personally liable for the outstanding debt. In its judgment entry, the trial court found that "an oral contract or meeting of the minds occurred when Mr. Burnett talked with Mr. Hilton early on at one of the gas stations." The court went on to explain that appellant failed to explain corporate formalities and made representations to appellee that the debts would be paid. In its closing remarks, the court noted that "had a corporation been involved properly, this may have been considered a personal guarantee; however, the court finds no such involvement, on the part of a corporation to start with."
 {¶ 17} However, the court's determination that appellant's corporation was not properly involved is not supported by the evidence. It is clear from the record that appellant's corporation was properly incorporated and observing corporate formalities at all times of the parties' relationship. In fact, the court clearly recognized the involvement of the corporation in accepting the parties' agreement that judgment be entered against Anderson Township *Page 6 
Marathon, Inc. for the outstanding debt. Therefore, the logical conclusion is that, in finding that an oral contract had been reached, the court essentially found that appellant had held himself out as personally liable for the corporation's obligations. However, we find that appellee did not introduce sufficient evidence to support that conclusion and the court erred in piercing the corporate veil to hold appellant personally liable.
 {¶ 18} In this case, the only evidence presented by appellee was Burnett's own testimony that he believed he was dealing with Mr. Hilton personally, as opposed to a corporate entity. Burnett admitted that he kept only the address and vendor license number of a customer, rather than the name, on his invoices and that he never sought to discover the identity of the entity he was dealing with. Appellee was unable to produce any evidence that appellant ever represented that he was personally responsible for the purchases. Burnett testified that he spoke with appellant personally on numerous occasions and argued that appellant's personal involvement in the dealings of Anderson Township Marathon, Inc. was a sufficient basis for finding him individually liable.
 {¶ 19} However, the Ohio Supreme Court has held that "mere control over a corporation is not in itself a sufficient basis for shareholder liability." Belvedere at 289. It is clear that appellant's personal involvement in the dealings of the corporation did not violate the threshold anticipated by the first prong of Belvedere. While appellee argued that appellant's involvement in corporate dealings amounted to a representation that appellant was operating as an individual, appellee also admitted that on various deliveries to the Marathon stores he had similar dealings with appellant's wife, the corporation manager Haislip, and various other store employees.
 {¶ 20} Further, as testified to by appellant, the details of the tobacco purchases for the Marathon stores were negotiated by appellee and the corporation's manager, Haislip. Appellant submitted copies of the corporate checks, bearing the name of the corporation and *Page 7 
signed by Karen Hilton, used to pay for the purchases from appellee. Appellant also submitted the tobacco retail and vendor's licenses, bearing the corporate name, which were required and posted at each Marathon location. Based on the evidence presented, we do not find that there was competent and credible evidence to support the court's finding that appellant engaged in activities which would justify piercing the corporate veil and holding him personally liable for the corporation's debts. The details of the tobacco purchases from appellee were negotiated through the corporation's manager and appellee presented no evidence that appellant held himself out as personally responsible for those debts.
 {¶ 21} We further find that appellee failed to demonstrate that an oral contract was reached or that appellant promised to be personally liable for the outstanding debt during the January phone conversation. "In order to declare the existence of a contract, the parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain."Choate v. Tranet, Inc., Warren App. No. CA2005-09-105, 2006-Ohio-4565, ¶ 67. In this case, appellant failed to produce any evidence regarding the existence or terms of such an agreement.
 {¶ 22} A review of the record reveals that appellee never testified regarding the existence of any oral contract and the only mention of such an agreement was during cross-exam of appellant. During questioning, the following exchange took place:
 {¶ 23} "COUNSEL FOR APPELLEE: Okay. When you would have spoken with Mr. Burnett about January 5 of last year, a year ago January, do you recall that you said you were going to pay the full amounts by Beechmont by College by January 31 of `05?
 {¶ 24} "APPELLANT: Yes. I recall speaking to him.
 {¶ 25} "COUNSEL FOR APPELLEE: Do you recall saying that you'd pay the full amounts by that time?
 {¶ 26} "APPELLANT: We acknowledged that we owed the debt and we were trying *Page 8 
to pay our bills as soon as we possibly can.
 {¶ 27} "* * *
 {¶ 28} "COUNSEL FOR APPELLEE: So, any words that you would have used that he would have believed that you were promising to pay this individually, you would believe those words were to pay on behalf of the corporation.
 {¶ 29} "APPELLANT: Sure."
 {¶ 30} Later, on direct examination, appellant testified further and again stated that he did not personally guarantee the payment of the outstanding invoices.
 {¶ 31} It is clear from the transcript that the only evidence presented regarding this alleged oral contract was appellant's own testimony that any representations he made to appellee were on behalf of the corporation. We therefore find that there was not sufficient competent and credible evidence to support the court's finding that appellant agreed to be personally liable for the corporation's outstanding debts.
 {¶ 32} Because we find that appellee failed to produce any competent, credible evidence which would support the court's decision to pierce the corporate veil and hold appellant personally liable, appellant's assignments of error are sustained. Accordingly, we reverse the decision of the trial court.
 {¶ 33} Judgment reversed and judgment entered in favor of appellant.
WALSH, P.J., and YOUNG, J., concur.
[1] Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] We note that, while no judgment entry appears in the record and Anderson Township Marathon Inc. was never added as a party to this lawsuit, the parties agreed on the record at the bench trial to a judgment against the corporation in the amount of the outstanding debt. *Page 1