OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Ruthiran Siva, from a judgment of the Franklin County Court of Common Pleas, finding in favor of defendant-appellee, Richard Hess ("Hess"), on appellant's claim that Hess was personally liable for damages *Page 2 
arising from the breach of a lease agreement entered between appellant and a limited liability company.
 {¶ 2} Appellant is the owner of a commercial premises located at 1138 Bethel Road. Defendant-appellee, 1138 LLC (hereafter "1138 LLC"), is a limited liability corporation, formed under Ohio law in 2004, and comprised of five members: Hess, defendant-appellee Robert E. Haines, Lisa Hess, Nathan Hess, and Zack Shahin. On October 29, 2004, appellant and 1138 LLC entered into a written lease agreement, whereby 1138 LLC leased from appellant the Bethel Road premises for a term of five years, commencing on December 1, 2004, at a monthly rental amount of $4,000. Shortly thereafter, 1138 LLC began operating a bar on the premises.
 {¶ 3} On July 22, 2005, appellant filed a complaint, naming as defendants 1138 LLC, Hess, Robert E. Haines (individually "Haines"), and Haines' wife, Helen C. Haines. Under Count 1 of the complaint, appellant alleged that 1138 LLC was in default and breach of the lease agreement, while under Count 2 appellant sought to pierce the corporate veil to hold both Haines and Hess personally liable for the debts of the company.
 {¶ 4} On September 2, 2005, Haines and his wife filed an answer and counterclaim. On September 30, 2005, appellant filed a motion to dismiss the counterclaim. The trial court subsequently granted default judgment against Haines, and also granted appellant's motion to dismiss the counterclaim of Haines and his wife. On October 3, 2005, appellant filed a motion for default judgment against 1138 LLC as to the issue of liability. By entry filed October 7, 2005, the trial court granted appellant's motion for default judgment against 1138 LLC. *Page 3 
 {¶ 5} The matter came for hearing before the trial court on August 9, 2006, on the issue of individual liability as to Hess. By decision and entry filed August 28, 2006, the trial court found in favor of Hess on appellant's complaint, concluding that the evidence was insufficient to show Hess was the "alter ego" of 1138 LLC, or that he exerted the requisite degree of control over the business to hold him individually liable for the debt of the company.
 {¶ 6} On appeal, appellant sets forth the following assignment of error for this
court's review:
 The Common Pleas Court's Decision and Judgment in favor of Defendant/Appellee, was against the manifest weight of the evidence.
 {¶ 7} Under his single assignment of error, appellant contends that the trial court's decision finding in favor of Hess was against the manifest weight of the evidence. Appellant maintains there was sufficient evidence presented to establish all of the elements necessary, under Belvedere Condominium Unit Owners' Assn. v. R.R. RoarkCos., Inc. (1993), 67 Ohio St.3d 274, to hold Hess personally liable for the debts of 1138 LLC.
 {¶ 8} It is well-settled that "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. In considering whether a judgment is against the manifest weight of the evidence, an appellate court is "guided by a presumption that the findings of the trier-of-fact were indeed correct."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81. The rationale for this presumption, *Page 4 
affording deference to the findings of the trial court, "rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id.
 {¶ 9} In the present case, the trial court's analysis was based upon its assumption that the doctrine of "piercing the corporate veil" was applicable to limited liability corporations, and the court therefore considered the three-part test for piercing the corporate veil as set forth by the Ohio Supreme Court in Belvedere, supra. InBelvedere, supra, at 289, the court described that test as follows:
 * * * [T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
 {¶ 10} The first prong of Belvedere has been referred to as the "alter ego doctrine," and, in order to succeed under this prong, "a plaintiff must show that the individual and the corporation are fundamentally indistinguishable." Id., at 288. Some non-exhaustive factors to be considered in determining whether this prong has been met include grossly inadequate capitalization, the failure to observe corporate formalities, the diversion of funds or other property of the company for personal use, and the absence of corporate records. Sanderson Farms,Inc. v. Gasbarro, Franklin App. No. 01AP-461, 2004-Ohio-1460, at ¶ 26. In considering the second prong of Belvedere, the party seeking to pierce the corporate veil "must establish that `the shareholder exercised the control established *Page 5 
under the first prong of the test to commit fraud or other wrongful conduct.'" Id., at ¶ 38. In addition to fraud, Ohio courts have found the second prong to be satisfied "when `unjust or inequitable' consequences occur." Id.
 {¶ 11} Courts have held that whether the three-part test ofBelvedere has been satisfied is primarily for the trier of fact to determine, and a reviewing court will examine the record "for competent, credible evidence to support the decision of the trial court."Robert A. Saurber Gen. Contractor, Inc. v. McAndrews, Butler App. No. CA2003-09-239, 2004-Ohio-6927, at ¶ 26, citing Longo Constr, Inc. v.ASAP Technical Servs., Inc. (2000), 140 Ohio App.3d 665, 671.
 {¶ 12} We note, at the outset, an alternative argument urged by Hess in support of affirming the trial court's judgment. Specifically, Hess acknowledges that the trial court rejected his argument that a limited liability company is not governed by common-law principles creating a right to pierce the corporate veil; nevertheless, Hess reiterates the contention he made before the trial court that the legislature did not intend personal liability against a limited liability company except under very limited circumstances. Hess, however, did not cross appeal the trial court's determination that the concept of piercing the corporate veil was presumptively applicable to limited liability corporations, and, thus, has failed to preserve for appeal that argument. See Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 14. Thus, the issue before this court on appeal is whether the trial court's application of Belvedere to the facts of this case was against the manifest weight of the evidence adduced at trial.
 {¶ 13} Regarding the first prong of Belvedere, appellant contends that the evidence regarding 1138 LLC demonstrates undercapitalization, lack of adequate *Page 6 
business records, and the commingling of funds. Appellant maintains that Hess had the ultimate discretion over 1138 LLC, and that he ignored the formalities normally associated with a limited liability company. As to the second and third prongs of Belvedere, appellant contends that Hess had no idea what happened to the assets of 1138 LLC and that, because the limited liability corporation was nothing more than a shell, appellant had nowhere to look to collect unpaid rent and other amounts due as a result of the breach.
 {¶ 14} In applying the test set forth in Belvedere, supra, the trial court found that appellant had not met his burden of proof that Hess was the alter ego of 1138 LLC, or that Hess exerted the requisite degree of control over the business to justify piercing the corporate veil. Rather, the trial court found credible testimony that Haines exerted much of the control over the operation of the business, and that the manner in which Haines exercised that control caused Hess to verbally agree to relinquish his interest in the business in March 2005.
 {¶ 15} Based upon this court's examination of the record, we find there was competent, credible evidence to support the trial court's determination. At trial, much of the evidence regarding the formation and operation of 1138 LLC came from the testimony of Hess, who related that the members of 1138 LLC held an initial meeting to determine how the company would be run. As noted under the facts, the company opened a bar, "Sherlocks," on the rental premises. At the time of the formation of 1138 LLC, Nathan Hess, who was to manage the bar, contributed $4,000 to start the business, while members Haines and Shahin were to contribute the balance. Hess testified that Shahin's contribution was approximately $25,000; Haines, however, failed to contribute his full *Page 7 
share at the outset, and, according to Hess, this became "a problem right off the get go." (Tr. at 20.)
 {¶ 16} At about the time of the formation of 1138 LLC, Hess was also involved in the formation of another limited liability company, the Easton Wine Gallery ("Wine Gallery"), a retail wine business. Shahin and Nathan Hess were also members of that company. Hess testified that Rich Ratterman and Lisa Hess controlled the day-to-day operations of the Wine Gallery. Hess wrote checks to both 1138 LLC and the Wine Gallery, but Hess testified that 1138 LLC had its own separate checking account.
 {¶ 17} Upon review, the record contains evidence to support the trial court's finding that Haines exercised significant control over 1138 LLC, ultimately forcing Hess out of the bar venture. According to Hess, while Haines' role was initially intended to be limited to that of investor, he became involved from the outset in the bar's day-to-day operations. Hess stated that problems arose with Haines shortly after Sherlocks opened around December 2004; Haines, who was authorized to make purchases on behalf of 1138 LLC, was at one point taken off the checking account because, according to Hess, "he took money out of the account." (Tr. at 31.) Further, the fact that Haines "had not put in the amount of money that he was supposed to have put in" contributed to an acrimonious relationship between Hess and Haines. (Tr. at 32.)
 {¶ 18} An attorney subsequently advised Hess "to either buy him [Haines] out or have him buy you out." (Tr. at 33.) As a result of these developments, and after approximately just three months of operation, Hess, along with Nathan Hess, Shahin and Lisa Hess, reached an oral agreement with Haines to turn over all the operations of the bar to him in March 2005. That agreement was later memorialized in a written document, *Page 8 
signed by the parties on June 2, 2005, and Hess testified that he had no involvement in the operation of the bar after early March 2005. Here, there was evidence upon which the trial court could have concluded that Hess did not exercise the type of absolute, complete authority necessary to satisfy the first prong of Belvedere.
 {¶ 19} Even assuming, however, that the evidence was sufficient to show control on the part of Hess necessary to satisfy the first prong of the test, appellant did not present evidence demonstrating that Hess committed a fraud or illegal act against appellant. Although Hess expressed frustration that Haines failed to fulfill his financial commitments to the company, the evidence did not show that Hess purposely undercapitalized 1138 LLC, or that he formed the limited liability company in an effort to avoid paying creditors. Further, while Hess acknowledged writing checks to both 1138 LLC and the Wine Gallery, there was no evidence demonstrating that 1138 LLC had money for rent but that Hess fraudulently transferred funds to the Wine Gallery to avoid paying appellant, nor is there any evidence that Hess diverted funds to himself for the brief time he was involved with the bar. Rather, the evidence indicated that the primary reason for non-payment of rent was due to lack of revenue. According to Hess, the bar was never profitable, and, at the time he turned over operations to Haines in March 2005, 1138 LLC was behind in rent, "but it was paid up probably within a week after I got out." (Tr. at 49.) Based upon the evidence presented, a reasonable trier of fact could have concluded that 1138 LLC became insolvent due to unprofitable operations. Moreover, even if the record suggests poor business judgment by Hess, it does not demonstrate that he formed 1138 LLC to defraud its creditors. *Page 9 
 {¶ 20} Finally, the evidence did not show that appellant was misguided as to the fact he was dealing with a limited liability company. Appellant's counsel drafted the lease agreement, and appellant acknowledged at trial he did not ask any of the owners of 1138 LLC to sign the lease in an individual capacity. Significantly, appellant himself testified that he had no reason to believe Hess personally committed fraud against him.
 {¶ 21} A corporation's breach of contract, standing alone, is insufficient to satisfy the second prong of the Belvedere test.Connolly v. Malkamaki, Lake App. No. 2001-L-124, 2002-Ohio-6933, at ¶ 34 ("[t]o decide otherwise would completely vitiate the holding inBelvedere"). Rather, a party who suffers loss from a corporation's breach ordinarily has recourse against the corporation and its assets or guarantors, if any. Wilton Corp. v. Ashland Castings Corp. (C.A.6, 1999), 188 F.3d 670. In the instant case, appellant obtained default judgments against 1138 LLC and Haines. Appellant, however, has not demonstrated extraordinary circumstances to justify holding Hess personally liable. Accordingly, we conclude that the decision of the trial court, finding that appellant did not satisfy the elements ofBelvedere, is not against the manifest weight of the evidence.
 {¶ 22} Based upon the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 SADLER, P.J., and TYACK, J., concur. *Page 1