**NOT RECOMMENDED FOR PUBLICATION**
File Name: 08a0654n.06
Filed: October 24, 2008

No. 07-4252

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SANDERSON FARMS, INC., | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| ROCH T. GASBARRO, | ) | OPINION |
| | ) | |
| Defendant - Appellee. | ) | |
| | ) | |

**Before: GILMAN, KETHLEDGE and ALARCÓN, Circuit Judges.**[*]

**Arthur L. Alarcón, Circuit Judge.** Plaintiff-Appellant creditor Sanderson Farms, Inc.

("Sanderson") appeals from the district court's order affirming the bankruptcy court's decision in

favor of Defendant-Appellee debtor Roch T. Gasbarro ("Gasbarro"). The bankruptcy court found

that Gasbarro's obligation to Sanderson was discharged because: (1) Sanderson failed to meet its

burden under the 11 U.S.C. § 523(a)(2)(A) exception by a preponderance of the evidence; and (2)

the 11 U.S.C. § 523(a)(6) exception to Gasbarro's discharge claim was inapplicable. Sanderson

appeals on the grounds that the bankruptcy court erred by: (1) failing to apply the doctrine of

collateral estoppel and accord preclusive effect to a related state trial court judgment; (2) finding that

Sanderson failed to meet its burden of proof under § 523(a)(2)(A); and (3) failing to apply the proper

legal test for determining "willful and malicious" conduct under § 523(a)(6). Because we conclude

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

that the bankruptcy court erred in not applying the proper legal test set forth under §523(a)(6), we

vacate the bankruptcy court's judgment and remand for the bankruptcy court to make findings of fact

and conclusions of law consistent with our decision.

**I**

**A**

The bankruptcy court summarized the factual background as follows:

> Midwest was operated by the Defendant and his brother, Vincent Gasbarro. It began operating in March of 1992, and deboned, marinated and packaged chicken breasts for sale by retail stores and food service vendors. The Defendant testified that Kroger was one of Midwest's largest clients. The Defendant was President of Midwest, and he handled the sales to food service vendors. His brother, Vincent Gasbarro, was the Vice President, and he handled the sales to the retail grocery stores.

> The Plaintiff first extended credit to Midwest in June or July 1993. According to Mr. Bobby C. Hill ("Mr. Hill"), the Credit Manager for the Plaintiff, it conducted annual updates on Midwest's account, and reviewed credit reports and references. The Defendant testified that Midwest's oldest invoice generally did not exceed fourteen days. Mr. Hill confirmed that Midwest established a good credit history, and promptly paid until the beginning of 1995.

> In 1994 and 1995, there were two major events that changed Midwest's operations. First, the Defendant testified that in 1994 Midwest lost $115,000.00 due to the bankruptcy filing of a company known as A & W. According to the Defendant, this brought Midwest's 1994 net profits down to approximately $200,000.00. Second, the Defendant testified that on April 15, 1995, U.S. Citizenship and Immigration Services raided Midwest, taking eighty-eight percent of its employees. After the raid, it had to buy boneless chicken breasts, because it did not have enough employees to sustain its deboning operation.

> Midwest's credit relationship with the Plaintiff became strained. Mr. Hill, testified that he began to see a one or two day delay in payment at the end of the credit relationship. According to Mr. Hill, the payments eventually stopped with no advance notice. Mr. Hill testified that the last three shipping dates on open terms, were February 16, 1996, February 23, 1996, and March 1, 1996. According to Mr.

Hill, the Plaintiff usually had two loads outstanding. He testified that the Plaintiff would, however, usually receive a check for the goods, before the third order was shipped.

The Defendant testified that around February 13, 1996, he believed that Mr. John Bernard, Midwest's Controller who is deceased ("Mr. Bernard"), was giving him inaccurate information on Midwest's profit and loss statements. According to the Defendant, Mr. Bernard told him that he had to move some numbers in the balance sheet, and that the Defendant needed to make up a hundred thousand dollars. The Defendant also testified that he noticed that he was drawing more on a line of credit with Bank One. According to the Defendant, however, there was no indication that Midwest was not making money before that time. Consequently, the Defendant terminated Mr. Bernard's employment in early 1996, and hired Harold Pearson ("Mr. Pearson"), as Controller.

On February 14, 1996, the Defendant sent a letter to Mr. Bernard requesting that he turn over information related to Midwest's financial status. Mr. Pearson testified that he reviewed and reconciled all of its bank accounts, inventory, and equipment, and found a loss of $879,072.43 for 1995. After Mr. Pearson's review of Midwest's records, the Defendant, Mr. Bernard, and Mr. Pearson met to discuss the discrepancies in Midwest's balance sheets. Mr. Pearson testified that when he confronted Mr. Bernard about the discrepancies, the Defendant appeared dumbfounded. Mr. Pearson testified that he did not think that the Defendant knew of the company's negative financial position, and that there was no fraud in the transactions that he reviewed. He also testified that he did not observe any attempts by the Defendant and his family members to render Midwest insolvent.

According to the Defendant, he first became aware that Midwest was losing money around March of 1996. After discovering the accounting discrepancies, the Defendant testified that he immediately called and met with representatives of Bank One and all of his suppliers, including the Plaintiff. On March 6, 1996, Bank One sent a notice of default. On March 8, 1996, the Defendant agreed to an onsite audit by Bank One to be held on March 11, 1996.

Mr. Brian K. Harr ("Mr. Harr") was an Assistant Vice President and a business banker for Bank One between 1995-1996. Mr. Harr confirmed that he was advised during a meeting that what the bank thought was a $400,000.00 positive net worth was in fact a negative $400,000.00 net worth. At that time, Bank One switched Midwest's account to its Managed Assets Department. Mr. Harr testified that a group of Bank One auditors checked the reliability and validity of Midwest's accounts receivable during the one to two week audit. Following the audit, Bank

One imposed a lockbox. During that period, Bank One controlled the disposition of Midwest's receivables. Mr. Harr testified that he does not remember finding any irregularities with respect to the Gasbarros or the business.

After an initial phone conversation in early March of 1996, the Defendant and Mr. Hill, on behalf of the Plaintiff, met in Columbus to discuss new payment terms. On or about April 2, 1996, pursuant to a letter from Mr. Hill to the Defendant, the Plaintiff began to ship chickens to Midwest subject to conditions. Those conditions required that the total amount due on the current order be wire-transferred to the Plaintiff including an additional amount of approximately $2,500.00, to be applied to the existing debt. The record indicates that between April 4, 1996, and April 15, 1996, Midwest initiated four wire transfer payments pursuant to the conditions in the total amount of $121,230.95. From the wire transfers and additional payments made between May 16, 1996 and January 9, 1997, the sum of $21,250.00 was applied to the arrearage. In July 1996, Midwest ceased operations leaving a balance owed to the Plaintiff in the amount of $118,214.50.

Opinion and Order of the bankruptcy court, Joint Appendix ("JA") 270-73.

The district court summarized the relevant procedural history as follows:

In 1997, Sanderson [] sued Gasbarro and others in the court of Common Pleas of Franklin County, Ohio, in an action entitled *Sanderson Farms, Inc. v. Rocky Gasbarro, et al.*, Case No. 97CVH-01-75 ("State Court Action"). In this State Court Action, Sanderson [] sought to pierce the corporate veil and hold Gasbarro and other family members personally liable for unpaid debts. The Court of Common Pleas found in favor of Sanderson []. Gasbarro and other family members appealed. Gasbarro subsequently filed a Chapter 7 bankruptcy petition on December 14, 2001. The appellate court stayed the proceedings.[1] Gasbarro filed a motion for relief from stay, which the bankruptcy court subsequently denied.

On May 17, 2002, Sanderson [] commenced an adversary proceeding against Gasbarro to determine the dischargeability of the judgment in the State Court Action, pursuant to Code Sections 523(a)(2)(A) and (6). Thereafter, on February 28, 2003, Sanderson [] filed a motion for summary judgment. On January 16, 2004, the bankruptcy court denied this motion, and Sanderson [] appeal[ed] this denial. On June 25, 2004, Sanderson [] filed a motion for abstention and expedited hearing. On August 2, 2004, the bankruptcy court denied this motion, and Sanderson [] appeal[ed] this denial. In addition, Sanderson [] appeal[ed] the bankruptcy court's

---

[1]The appellate court subsequently lifted the stay as to all appellants other than Gasbarro.

January 26, 2005 denial of its January 7, 2005 Motion in Limine, in which it sought an order from the bankruptcy court precluding Gasbarro from introducing evidence inconsistent with findings made by the trial court in the State Court Action.

Opinion and order of the district court, JA 283-84.

**B**

In the bankruptcy court, Sanderson sought to have Gasbarro's debt excepted from discharge based on 11 U.S.C. §§ 523(a)(2)(A), 523(a)(6), or both. In a September 28, 2005 opinion and order, the bankruptcy court held that Sanderson failed to meet its burden under § 523(a)(2)(A) and that § 523(a)(6) was not applicable. Judgment was entered by the bankruptcy court on that same date. On August 28, 2007, the district court affirmed the bankruptcy court's decision. Judgment was entered by the district court on August 29, 2007. Sanderson filed a timely notice of appeal on September 27, 2007.

**C**

This Court has jurisdiction over this petition pursuant to 28 U.S.C. §§ 158(d) and 1291. On appeal, Sanderson argues that the bankruptcy court erred as a matter of law when it failed to apply the doctrine of collateral estoppel and accord preclusive effect to a judgment in a related state court action. Sanderson also disputes the bankruptcy court's finding that Sanderson failed to meet its burden of proof by a preponderance of the evidence under § 523(a)(2)(A) that Gasbarro's debt was not excepted from discharge. Sanderson further contends that the bankruptcy court erred as a matter

of law when it failed to apply the proper legal test for determining "willful and malicious" conduct under § 523(a)(6).

## II

## A

In reviewing an appeal originating from a bankruptcy court's order, "we directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision." *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 607 (6th Cir. 2000) (citation omitted). Findings of fact by the bankruptcy court are reviewed for clear error. *Id.* at 607. A factual finding is clearly erroneous when, although there is evidence to support it, "'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Conclusions of law are reviewed de novo. *Waterman*, 227 F.3d at 607. Pursuant to the de novo review standard, we must decide the legal questions presented independently of the bankruptcy court's determination. *O'Brien v. Ravenswood Apartments, Ltd. (In re Ravenswood Apartments, Ltd.)*, 338 B.R. 307, 310 (B.A.P. 6th Cir. 2006) (quoting *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001)).

## B

Discharge exceptions, such as § 523(a)(2)(A) and § 523(a)(6), are narrowly construed in favor of the debtor. *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999). The creditor bears the burden of proving by a preponderance of the evidence that a discharge exception applies. *Id.*

To except the discharge of a particular debt under § 523(a)(2)(A), a creditor must establish that: (1) the debtor obtained money through a material representation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998) (citation omitted).

Under § 523(a)(6), debts arising from a "'willful and malicious injury by the debtor to another entity or to the property of another entity'" may be excepted from discharge. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (quoting 11 U.S.C. § 523(a)(6)). For the discharge exception under § 523(a)(6) to apply, a debtor must: (1) "will or desire harm[;]" or (2) "believe injury is substantially certain to occur as a result of his behavior." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n.10 (6th Cir. 1999).

**III**

On appeal, Sanderson first argues that the bankruptcy court erred, as a matter of law, in denying Sanderson's motions for summary judgment, abstention, and its motion in limine because the bankruptcy court failed to accord preclusive effect to the state trial court's judgment as it related to dischargeability under § 523(a)(2)(A) and § 523(a)(6). Sanderson contends that regardless of the state trial court's choice of language, that court impliedly found Gasbarro's conduct fraudulent for purposes of § 523(a)(2)(A) and "willful and malicious" under § 523(a)(6). Accordingly, Sanderson claims that Gasbarro is precluded from disputing those issues before the bankruptcy court. Because of the inconsistencies in the state trial court's order, we will affirm the bankruptcy court's refusal to apply the doctrine of collateral estoppel.

**A**

A state court judgment is entitled to preclusive effect in a nondischargeability action if the law of the state would give collateral estoppel effect to the judgment. *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 388 (B.A.P. 6th Cir. 1998) (citation omitted). To assert collateral estoppel under Ohio law, a party must plead and prove the following: (1) the party against whom collateral estoppel is sought was a party – or in privity with a party – in the previous action; (2) there was a final judgment on the merits in the previous action after a full and fair opportunity to litigate the issue; (3) the issue was actually and directly litigated in the previous action and was necessary to the final judgment; and (4) the issue in the present action is identical to the issue

involved in the previous action. *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002) (citations omitted).

The issue before the state trial court was whether Sanderson could "pierce the corporate veil" to hold Gasbarro and his family personally liable for unpaid debts of various companies owned by Gasbarro and his family. Under Ohio law, "the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when[:] (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc., et al.*, 67 Ohio St. 3d 274, 289 (1993).

*Belvedere* did not expand on or explain the meaning of the phrase "an illegal act against the person seeking to disregard the corporate entity." *See id.* Certain Ohio courts, however, subsequently construed that term to "encompass a broader range of actions, namely those acts which would lead to unfair or inequitable consequences[.]" *Wiencek v. Atcole Co., Inc.*, 109 Ohio App. 3d 240, 244 (1996).[2] The Ohio Supreme Court recently rejected this expansive construction of the

---

[2]*See also Waste Conversion Techs., Inc. v. Warren Recycling, Inc.*, 191 Fed. Appx. 429, 434 (6th Cir. 2006) (citing *Wiencek* with approval and finding that "*Belvedere*'s second prong is not explicitly limited to actual fraud because the language used is 'fraud or illegal act'") (citation omitted); *Stypula v. Chandler*, No. 2002-G-2468, 2003 WL 22844296, at *3 (Nov. 26, 2003); *Cent. Benefits Mut. Ins. Co. v. RIS Adm'rs. Agency, Inc.*, 93 Ohio App. 3d 397, 403-04 (1994).

second *Belvedere* prong. In *Dombroski v. WellPoint, Inc.*, --- N.E. 2d ----, 2008 WL 4443943, at *6-7 (Sep. 30, 2008), the Ohio Supreme Court rejected the *Wiencek* decision and its progeny. *Dombroski* "modif[ied] the second prong of the *Belvedere* test[,]" *id.* at *1, and held that a party seeking to pierce the corporate veil "must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Id.* at *7.[3]

Although the state trial court held that Midwest and Ohio Valley Poultry's corporate veils could be pierced on this record, we cannot conclude from the state trial court's opinion that it found sufficient evidence of fraud or malice to make collateral estoppel applicable to Sanderson's § 523(a)(2)(A) or § 523(a)(6) claims.

The state trial court's findings regarding § 523(a)(2)(A) are internally inconsistent regarding whether Gasbarro committed fraud. At one point, the state trial court stated that it was "not convinced that any of the [d]efendants intentionally defrauded the [p]laintiff at the time the product was ordered[.]" It also found, however, that "[p]laintiff suffered an unjust loss in the amount of $118,214.50 because of the domination, control, and fraudulent acts of said [d]efendants." The state trial court's order is unclear as to the basis of its ruling against Gasbarro. We cannot determine decisively from the state trial court's contradictory findings that its decision was based on a finding

---

[3]*Dombroski* does not have bearing on resolving the collateral estoppel issue in this matter. Because the state trial court's order is unclear as to the basis of its ruling against Gasbarro, collateral estoppel is inapplicable.

of fraud. Accordingly, we affirm the bankruptcy court's refusal to apply the doctrine of collateral estoppel to Sanderson's § 523(a)(2)(A) claim.

**B**

As discussed above, for the § 523(a)(6) discharge exception to apply, a debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz*, 190 F.3d at 465 n.10. The state trial court's order makes no reference to malice, whether Gasbarro intended to harm Sanderson, or the substantial certainty that his behavior would harm Sanderson.[4] Because we cannot determine from the state trial court's order whether the issue of malice was "actually and directly litigated" and "necessary to the final judgment[,]" *Sweeney*, 276 B.R. at 189, we will affirm the bankruptcy court's rejection of the collateral estoppel doctrine to Sanderson's § 523(a)(6) claim.

**IV**

**A**

After conducting a trial on the merits, the bankruptcy court determined that there was insufficient evidence to support a finding of false pretenses or that Gasbarro committed fraud as required for the applicability of § 523(a)(2)(A)'s discharge exception. For the reasons set forth

---

[4]The state appellate court highlighted that "the trial court did not explain in its decision why it awarded punitive damages, nor did the court . . . make a specific finding of malice."

below, we have concluded that we must vacate the bankruptcy court's judgment with respect to

Sanderson's § 523(a)(6) claim and direct that court to conduct a new evidentiary hearing. We also

vacate its order respecting the § 523(a)(2)(A) claim without determining whether it was correct in

its findings based on the evidence presented at trial. The evidence presented at the new trial may

cause the bankruptcy court to reach a different conclusion on the § 523(a)(2)(A) claim.

**B**

In its September 28, 2005 opinion and order following a trial on the merits, the bankruptcy

court found that § 523(a)(6) was "not applicable" because "[t]here is no indication that [Gasbarro]

intended to harm [Sanderson]." In so holding, the bankruptcy court erred by failing to apply the

proper legal standard for determining the dischargeability of debt under § 523(a)(6). It did not apply

the second prong of the standard – that is, whether Gasbarro was substantially certain that his actions

would harm Sanderson. *Markowitz*, 190 F.3d at 464. The bankruptcy court's failure to apply the

proper legal standard is further demonstrated by its failure to discuss the evidence in the record

suggesting that Gasbarro was substantially certain that his actions would harm Sanderson.

Sanderson presented evidence that on the eve of, and during the period that Midwest ordered product

from Sanderson in mid February to early March 1996, Midwest was transferring large sums of

money, totaling hundreds of thousands of dollars, to Gasbarro's family members without

documentation or sufficient explanation. Midwest was also transferring business property for less

than its fair market value to other entities controlled by Gasbarro and his family members. The

evidence presented to the bankruptcy court could support an inference that Gasbarro and his family members were raiding Midwest's corporate assets during the relevant period and that Gasbarro was substantially certain that his actions would harm Sanderson. This Court lacks the power, however, to make findings of fact. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) ("A court of appeals 'is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.'") (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Accordingly, we REMAND this matter to the bankruptcy court with instructions to conduct a new evidentiary hearing and to make renewed findings of fact and conclusions of law consistent with this opinion.

**IV**

For the foregoing reasons, we: (1) **AFFIRM** the bankruptcy court's rejection of the doctrine of collateral estoppel and affirm its orders denying Sanderson's motions for summary judgment, abstention, and its motion in limine; and (2) **VACATE** the bankruptcy court's judgment regarding Sanderson's §§ 523(a)(2)(A) and 523(a)(6) claims and **REMAND** with instructions.